Ronald R. DOUGAN *v.* STATE of Arkansas

CR 97-189                                   957 S.W.2d 182

Supreme Court of Arkansas
Opinion delivered December 18, 1997

S. *Kyle Hunter*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. A jury sentenced Ronald Dougan to forty years' imprisonment for rape. Dougan raises four arguments for reversal. Finding no merit to these arguments, we affirm Dougan's conviction.

Ronald Dougan was charged by information with raping his sixteen-year-old stepdaughter on February 20, 1994. At trial, the victim testified that Dougan sexually violated her on five occasions prior to February 20, 1994. According to the victim, Dougan touched her in a sexually explicit manner once when she was six years old, and twice when she was eleven. The victim claimed that in August of 1991, when she was twelve years old, Dougan had sexual intercourse with her. The victim reported the crime to the police, and carnal abuse charges were filed against Dougan. According to the victim, the charges were dropped because her mother forced her to sign a statement declaring that the rape never occurred. Dougan had sexual intercourse with the victim again when she was fourteen years old.

The victim testified that on February 20, 1994, she and her two siblings were sleeping at Dougan's home. The victim claimed that early that morning Dougan came into her room and forced her to have sexual intercourse. The next morning, the victim's aunt, Mary Ann Hemrick, picked-up the children and brought them to her home. A few days later, Dougan called the victim and told her that her five-year-old sister was going to live with him. In response, the victim became hysterical and started crying. The victim then told her aunt that Dougan had raped her, and that she feared he would do the same to her sister. Mary Ann

Hemrick took the victim to a therapist who reported the rape to the Department of Human Services ("DHS"). DHS investigated the matter, and the incident was eventually reported to the police.

Dougan testified in his own defense, and denied having any sexual contact with the victim. Dougan explained that the victim fabricated the August 1991 incident to get attention, and that she lied about the February 1994 incident so that her five-year-old sister could live with her and her aunt.

Jayme Dougan, Ronald Dougan's fourteen-year-old son, testified at trial on behalf of the defense. Jayme testified that he could not sleep the night of February 20, 1994. Jayme claimed that he saw his father sleeping on the couch when he went to the kitchen several times that night. Finally, Jayme testified that he would have seen his father pass his bedroom in order to get to the victim's bedroom.

Based on this evidence, the jury found Dougan guilty of raping the victim on February 20, 1994, and sentenced him to forty years' imprisonment. On appeal, Dougan does not challenge the sufficiency of the evidence to support his conviction. Instead, Dougan asserts that he was denied effective assistance of counsel, that the court erred when it allowed the State to introduce evidence of his prior sexual contact with the victim, and that the court erred when it allowed a witness to read from a DHS report. Because we find no merit in Dougan's arguments, we affirm his conviction.

## I.   Ineffective Assistance of Counsel

For his first argument on appeal, Dougan asserts that he was deprived of effective assistance of counsel during jury selection because his attorney did not adequately poll the potential jurors and failed to exercise a single peremptory strike. In order for a defendant to argue ineffective assistance of counsel on direct appeal, he must first have presented the claim to the lower court either during the trial or in a motion for new trial. *Chavis v. State*, 328 Ark. 251, 942 S.W.2d 853 (1997); *Smith v. State*, 328 Ark. 249, 943 S.W.2d 234 (1997); *Hicks v. State*, 327 Ark. 652, 941 S.W.2d 387 (1997). Dougan failed to pursue either of these

options, and accordingly we are precluded from addressing this argument on direct appeal.

## II. Previous Sexual Misconduct

Next, Dougan claims that the trial court committed reversible error when it allowed the State to introduce evidence of five other instances of alleged sexual misconduct because the State only charged him with raping the victim on February 20, 1994. Specifically, Dougan contends that the testimony was inadmissible pursuant to Ark. R. Evid. 404(b) as character evidence that had no relevance except to show his propensity to commit the crime charged, and that the prejudicial effect of the evidence outweighed its probative value under Ark. R. Evid. 403.

■ This argument has no merit because we have consistently recognized the "pedophile exception" which states that evidence of similar sexual acts with the same child or other children in the same household is admissible to show a "proclivity toward a specific act with a person or class of persons with whom the accused has an intimate relationship" or to "prove the depraved sexual instinct of the accused." *Douthitt v. State*, 326 Ark. 794, 935 S.W.2d 241 (1996); *Mosely v. State*, 325 Ark. 469, 929 S.W.2d 693 (1996); *Clark v. State*, 323 Ark. 211, 913 S.W.2d 297 (1996); *Thompson v. State*, 322 Ark. 586, 910 S.W.2d 694 (1995). Thus, we conclude that the trial court did not abuse its discretion when it allowed evidence of the five prior instances of sexual misconduct.

## III. Disclosure of the DHS Report

■ Next, Dougan states in passing that his conviction should be reversed because the State failed to disclose the existence of the DHS report, and it did not include a copy of the report in its investigative file. When an appellant does not cite authority or make a convincing argument, and when it is not apparent without further research that the point is well taken, we will affirm. *Qualls v. Ferritor*, 329 Ark. 235, 947 S.W.2d 10 (1997); *Williams v. State*, 329 Ark. 8, 946 S.W.2d 678 (1997). On appeal, Dougan has failed to cite a single authority or make a con-

vincing argument in support of his allegation. In fact, Dougan only mentioned the alleged nondisclosure in a subheading of his brief. Accordingly, we are unable to address the merits of his contention.

## IV. The DHS Report as Hearsay

Finally, Dougan asserts that the trial court committed reversible error when it allowed a witness to read portions of a DHS report about the February 20, 1994, incident. As previously mentioned, Jayme Dougan testified that his father did not enter the victim's bedroom on the night of the rape. On cross-examination, the State attempted to impeach Jayme by reading portions of a statement he gave to a DHS social worker a few days after the alleged rape, and the following colloquy occurred:

STATE: [Reading from the DHS report] "Stated he saw his dad go to [the victim's] bedroom."

JAYME: He just stuck his head in the door.

STATE: "And he heard [the victim] saying, 'stop, stop.'"

JAYME: No, I didn't.

STATE: She [the social worker] made that up?

JAYME: I guess she did, 'cause I didn't say that.

STATE: "Stated he, his dad, was in [the victim's] room for about 30 minutes."

JAYME: No, he wasn't, either.

STATE: You didn't say that; she made it up?

JAYME: I guess she made it up, because he didn't go in there.

STATE: "Stated he knew it was about 30 minutes by watching his clock in his room."

JAYME: He never did go in there, so I don't know where they got that from.

STATE: So that's another lie the Social Worker made up?

JAYME: I guess it is.

Dougan did not object to any of the above questions or testimony.

Thelma Bean, a Protective Services Supervisor for DHS, testified during the State's case in rebuttal. Bean identified the

report made by the DHS social worker who investigated the February 20, 1994 rape. Bean explained that she did not write the report, but as a supervisor it was a regular business practice for her to keep such reports in her office. The State then asked Bean if the report contained a statement regarding whether Jayme saw his father enter the victim's bedroom. Dougan objected on the basis that the report was hearsay. The State argued that the report fell under the business-record exception to the hearsay rule, and the judge overruled Dougan's objection. Thelma Bean then read the following statement from the DHS report:

> He [Jayme Dougan] stated he saw his dad go into [the victim's] bedroom, and heard [the victim] saying "Stop, stop." Stated he, his dad, was in [the victim's] bedroom for about 30 minutes. Stated he knew it was about 30 minutes from watching his clock in his room.

On appeal, Dougan argues that the trial court committed reversible error when it allowed Thelma Bean to read this portion of the DHS report because it was hearsay that did not fall under the business-record exception. We do not need to address the merits of this argument because we have said on numerous occasions that when hearsay is erroneously admitted, we will not reverse if it is cumulative of other evidence admitted without objection. *Weber v. State*, 326 Ark. 564, 933 S.W.2d 370 (1996); *Luedemann v. Wade*, 323 Ark. 161, 913 S.W.2d 773 (1996); *Caldwell v. State*, 319 Ark. 243, 891 S.W.2d 42 (1995). Of particular importance are *Zufari v. Architecture Plus*, 323 Ark. 411, 914 S.W.2d 756 (1996), and *Hooper v. State*, 311 Ark. 154, 842 S.W.2d 850 (1992), where we refused to consider whether a statement fell under the business-record exception to the hearsay rule, Ark. R. Evid. 803(6), because the same or similar evidence was admitted at trial without objection.

■ In this case, the relevant portions of the DHS report were already admitted without objection during the impeachment of Jayme Dougan. Hence, as in *Zufari* and *Hooper*, we need not address whether Thelma Bean's testimony fell under the business-record exception because the same evidence was already admitted at trial without objection.

Affirmed.