Michael RAMAKER *v.* STATE of Arkansas

CR 00-449 46 S.W.3d 519

Supreme Court of Arkansas
Opinion delivered June 14, 2001

*Morris & Morris P.A.*, by: *Tim R. Morris*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.

W.H. "DUB" ARNOLD, Chief Justice. Appellant, Michael Ramaker, was convicted of first-degree murder and sentenced to thirty-five years' imprisonment in the Arkansas Department of Correction for the shooting death of his girlfriend, Ann Swee. We affirm his conviction and sentence.

On August 1, 1998, appellant, after allegedly checking a 12-gauge shotgun to ensure there was no ammunition, pointed the shotgun at Ms. Swee from a distance of eighteen to twenty-four inches and pulled the trigger. The gun discharged, and Ms. Swee died almost instantly from a wound to the left side of her face and

head. Appellant was charged with capital murder. His defense at trial was that the shotgun had a defect that kept him from establishing that the gun was loaded. Many pretrial motions were made, including a motion to exclude photographs of the victim.

During the trial, the State presented an Arkansas Crime Laboratory expert who tested the weapon eight times and found no malfunction. Appellant's expert stated that he tried the weapon 150 times, and the weapon had malfunctioned 10 percent of the time. He stated that he saw a shell spring from the magazine onto a carrier assembly four times and that someone could load a round without one knowing it. Prior to trial, the Benton County Sheriff's Department had cleaned the weapon.

During the trial, appellant's expert witness demonstrated the operation of the weapon; it malfunctioned twice. The first time was exactly like he had seen during his tests. The second time was a new malfunction. The gun's bolt jammed and could not be dislodged. During a recess, the trial judge ordered the expert to unjam the gun while in the presence of a prosecutor's assistant. The gun was unjammed, although a slide release button was broken in the process. The trial judge informed the jury of this process and event. Appellant strenuously objected to anything that entailed an unjamming of the gun. The evidence was submitted to the jury for its use in deliberations.

During trial, appellant made a motion for directed verdict. He claimed that the State had failed to establish the charges against him. He also objected to gruesome photographs of the victim's face. He further asked that his request for a polygraph be admitted before the jury, which the State adamantly opposed, and the trial court denied. Appellant also objected to the weapon's introduction as evidence due to the fact that it had been cleaned.

Appellant was convicted. It is from that conviction that he now appeals. He asserts the following points for reversal:

1) The trial court abused its discretion in allowing the 12-gauge shotgun to be delivered to the jury as evidence;

2) The trial court erred when it allowed the prosecution to introduce a redacted statement that excluded references to the defendant's offer of taking a polygraph test because it substantially prejudiced the defense;

3) The trial court abused its discretion in allowing prejudicial, inflammatory, and cumulative photographs of the victim to be admitted as evidence;

4) The trial court erred when it failed to grant the motion for directed verdict because the evidence failed to support a conviction for first-degree murder.

We affirm.

## I. Sufficiency of Evidence

■■■ Double jeopardy considerations require this court to consider a challenge to the sufficiency of the evidence before other points are raised. See Jones v. State, 336 Ark. 191, 984 S.W.2d 432 (1999); Conner v. State, 334 Ark. 457, 982 S.W.2d 655 (1998); Britt v. State, 334 Ark. 142, 974 S.W.2d 436 (1998). A motion for a directed verdict is a challenge to the sufficiency of the evidence. Britt v. State, 344 Ark. 13, 38 S.W.3d 363 (2001); Barr v. State, 336 Ark. 220, 984 S.W.2d 792 (1999). The test for such motions is whether the verdict is supported by substantial evidence, direct or circumstantial. Id. Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. Peeler v. State, 326 Ark. 423, 932 S.W.2d 312 (1996); Ferrell v. State, 325 Ark. 455, 929 S.W.2d 697 (1996). On appeal, we review the evidence in the light most favorable to the appellee and consider only the evidence that supports the verdict. Barr v. State, supra.

■■ Appellant was convicted of murder in the first degree. On appeal, he challenges the sufficiency of the evidence to support his conviction; however, he was charged with capital murder and, at trial, when making his motions for directed verdict, he only moved as to capital murder and not as to the lesser-included offense of murder in the first degree, for which he was ultimately convicted. This Court has held that in order to preserve challenges to the sufficiency of the evidence supporting convictions for lesser-included offenses, defendants are required to address the lesser-included offenses, either by name or by apprising trial courts of the elements of the lesser-included offenses, in their motions for directed verdict. See Jordan v. State, 323 Ark. 628, 917 S.W.2d 164 (1996). As appellant failed to move for a directed verdict on the

lesser-included offense of first-degree murder, he is procedurally barred from challenging the sufficiency of the evidence on appeal.

## II. Admission of Shotgun into Evidence

Appellant does not dispute that he caused Ms. Swee's death; he contends, rather, that the shooting was accidental because he believed that the shotgun was unloaded. Consequently, the primary factual issue at trial was whether a malfunction caused the shotgun to be ready to fire, despite allegedly appearing unloaded to the appellant. On appeal, the appellant raises several arguments involving the shotgun. He argues that the trial court erred in admitting the gun after hearing testimony that the police had cleaned it prior to the last of a series of test firings, by ordering the weapon to be repaired after it jammed during the testimony of the appellant's ballistics expert, and in commenting on the weight of the shotgun as evidence.

### A. Alleged Police Tampering

Appellant first argues that the trial court erred in admitting the gun as evidence because there was direct evidence of police tampering. During the testimony of Investigator Jim Yarber, appellant made a chain-of-custody objection to the admission of the shotgun. He alleged that the police cleaned the gun prior to the last of a series of test firings and, as a result, that it was no longer the same weapon that he used in the shooting. The trial court did not rule on the objection but allowed Investigator Yarber to testify about the circumstances of the cleaning. Yarber stated that the gun barrel was removed to access the firing pin and that the gun was cleaned. He also testified that the gun was reassembled after the cleaning, that no parts were replaced or altered, and that no one "manipulated the gun in any way." Appellant's counsel then conducted a *voir dire* examination, and Yarber testified that no one videotaped the cleaning of the gun. At the conclusion of the *voir dire* examination, the appellant stated that he had "no objection" to the admission of the shotgun. The gun was then admitted into evidence.

On appeal, appellant claims that the trial court erred in admitting the gun because the cleaning removed soot and other dirt that caused the malfunction that he alleges occurred on the night of the shooting and, consequently, that that malfunction could no longer be demonstrated for the jury. The State asserts that appellant's argument on this issue is procedurally barred as he stated that he no

longer had an objection to the admission of the gun into evidence after the circumstances of the cleaning were developed through Investigator Yarber's testimony. We agree with the State.

 We have held that when an objection is withdrawn, it is as though the objection was never made. *See Greene v. State*, 317 Ark. 350, 878 S.W.2d 384 (1994). The appellate court, moreover, will not consider arguments that are raised for the first time on appeal. *See Ayers v. State*, 334 Ark. 258, 975 S.W.2d 88 (1998). Therefore, although he had made the chain-of-custody objection, once he stated that he then had "no objection" to the evidence, it was as though he had never made the objection and his argument on this point is, therefore, barred on appeal.

*B. Trial Court's Order to Repair*

The appellant next argues that the court abused its discretion when it ordered experts from both sides to repair the gun after it jammed during the State's cross-examination of the appellant's expert. Before the case was submitted to the jury, the prosecutor noted that the malfunction that caused the shotgun to jam was not the same malfunction that the appellant claimed occurred on the night of the shooting, and he requested that the trial court allow the gun to be restored to "working order" to enable the jury to view the gun in substantially the same condition as it existed at the time of the crime. The trial court ordered the repair over the appellant's objection. The gun was operable after the repair, but the slide release was broken. Appellant now argues that the shotgun, in its jammed condition, proved his assertion that it malfunctioned on the night of the shooting and, thus, the repair prejudiced him by removing "direct exculpatory evidence" from the jury. He also intimates that, by ordering the repair, the trial court exhibited a bias in favor of the State. We disagree.

 Arguably, the trial court may have abused its discretion by ordering a repair of the gun, when the appellant's very defense was that the gun malfunctioned on the night the victim was shot. Still, the appellant must show that he was prejudiced by the trial court's decision to submit the repaired gun to the jury. This Court will not reverse an evidentiary ruling absent a showing of prejudice. *Clark v. State*, 323 Ark. 211, 913 S.W.2d 297 (1996); *Solomon v. State*, 323 Ark. 178, 913 S.W.2d 288 (1996). As the gun had already malfunctioned twice in the presence of the jury, the repair would not seem to diminish the appellant's ability to prove that the gun was prone to malfunction; in fact, it would seem to

work, to the contrary, in his favor. Certainly, he was as likely as the State to benefit from the repair because his defense turned on whether the gun could be ready to fire despite appearing unloaded when it was "racked open." Appellant had, in fact, stipulated to making dummy rounds available to the jury so that it might test the gun to see if it appeared "unloaded" when it was actually loaded. Therefore, if the jam had not been repaired, the jurors would not have been able to do what the appellant wanted them to do, which was "rack" the gun to determine whether it appeared unloaded but ready to fire. In short, we hold any amount of error committed by the trial court on this issue to be harmless, as appellant is unable to demonstrate prejudice as a result. *See Bledsoe v. State,* 344 Ark. 86, 39 S.W.3d 760 (2001).

### C. Trial Court's Comment on Evidence

■ The appellant contends that the trial court improperly commented on the evidence when it admonished the jury about the measures that were taken to repair the gun. His argument is twofold. First, he contends that the trial court's reference to the slide release button as "working properly up until today" amounted to a comment on the credibility of his expert witness. Second, he claims that the trial court commented on the weight of the shotgun as evidence when it advised the jury that it ordered experts from both sides to "get the gun out of the jammed condition it was in because I saw that as perhaps interfering with your study and use of it as evidence." We hold appellant's argument to be procedurally barred, as he did not lodge an objection or move for a mistrial when the court advised the jury of the shotgun's repair.

■ This Court will not consider arguments on appeal in the absence of a specific, contemporaneous objection at trial. *See Johnson v. State,* 342 Ark. 186, 27 S.W.3d 405 (2000). In this case, appellant did not object at the time the court advised the jury of the repair. His initial objection to the trial court's order to repair the gun certainly would not preserve this issue for appeal because it did not encompass the trial court's comments to the jury. *See Pyle v. State,* 340 Ark. 53, 8 S.W.3d 491 (2000)(appellants are limited by the scope and nature of the arguments they made at trial.)

### III. Appellant's Offer to Take Polygraph

Appellant argues that the trial court erred when it allowed the State to redact his requests to take a polygraph exam from the tape

recording and the transcript of one of his custodial statements. At trial, appellant objected to the redactions because they removed the implication that he told the truth when he stated that he believed the gun was unloaded. The trial court, citing *Wingfield v. State*, 303 Ark. 291, 796 S.W.2d 574 (1990), overruled appellant's objection. On appeal, appellant acknowledges that *Wingfield* prohibits the admission of evidence of an accused's willingness to take a polygraph, but he argues that the application of the rule in this case interfered with his ability to present his defense. Appellant suggests that this Court adopt Wisconsin's view, as expressed in *State v. Santana-Lopez*, 613 N.W.2d 918 (2000), that an offer to take a polygraph examination can be admissible to show consciousness of innocence. We decline to adopt this view.

Arkansas Code Annotated § 12-12-704 (Repl. 1999) provides that the results of a polygraph exam "shall be inadmissible in all courts in this State." The only exception to this rule occurs when both parties stipulate to the admissibility of the polygraph results in writing. *Foster v. State*, 285 Ark. 363, 687 S.W.2d 829 (1985). The United States Supreme Court has held that because polygraph results only serve to bolster or attack a witness's veracity, rules barring their admissibility do not abridge an accused's right to present a defense. *See United States v. Scheffer*, 523 U.S. 303 (1998). The prohibition against the admission of polygraph results extends to a witness's willingness or reluctance to be examined as evidence of consciousness of innocence or guilt. *See Wingfield, supra*. This rule, like the bar against polygraph results, only prevented the appellant from *bolstering* his own credibility. He was still able to introduce his version of the shooting through his custodial statements and through the testimony of his expert, who corroborated his claim that a malfunction caused the gun to be ready to fire. As such, the appellant cannot show the prejudice upon his right to present a defense. We, therefore, find no error by the trial court on this point.

*IV. Admission of Photographs into Evidence*

During the testimony of Investigator Mike Sydoriak, the State sought the admission of a series of photographs, sequentially numbered as Exhibits 35 through 37, that depicted the location of the victim's body and the nature of her wounds. The appellant objected, alleging that Exhibits 35 and 36, which are close-ups of the victim's gunshot wound, were inflammatory and cumulative to the medical examiner's testimony. He further alleged that Exhibit

37 did not accurately reflect the scene and that it was cumulative of photos that were already admitted. The court admitted Exhibit 35 because it depicted the nature and location of Ms. Swee's wound, and it admitted Exhibit 37 because it showed that stippling was present at the scene. The trial court agreed that Exhibit 36 was cumulative, however, and sustained appellant's objection regarding that photo.

On appeal, appellant contends that the trial court erred when it admitted Exhibit 35 because it had little probative value, it was gruesome, and it was cumulative to other photos that depicted the victim. He further argues that the trial court erroneously took a "carte blanche" approach to the admission of the photo when it failed to weigh the probative value of the photo against the danger of unfair prejudice. Regarding the admissibility of photos, this Court has stated the following:

> The mere fact that a photograph is inflammatory or is cumulative is not, standing alone, sufficient reason to exclude it. (Citation omitted.) Even the most gruesome photographs may be admissible if they assist the trier of fact in any of the following ways: by shedding light on some issue, by proving a necessary element of the case, by enabling a witness to testify more effectively, by corroborating testimony, or by enabling jurors to better understand the testimony. (Citation omitted.)

*Jones v. State*, 336 Ark. 191, 209, 984 S.W.2d 432, 441 (1999)(*quoting Jefferson v. State*, 328 Ark. 23, 941 S.W.2d 404 (1997), and *Weger v. State*, 315 Ark. 555, 869 S.W.2d 688 (1994)). We have further held that the nature and extent of a victim's wounds are relevant to a showing of intent, which may be inferred from the type of weapon used, the manner of use, and the nature, extent, and location of the wounds. Even if photographs are inflammatory or prejudicial in the sense that they show human gore repulsive to the jurors, they are nevertheless admissible at the discretion of the trial court if they help the jury understand the accompanying testimony. *See Jones v. State, supra; Willett v. State*, 322 Ark. 613, 911 S.W.2d 937 (1995). It is only when an inflammatory or gruesome photograph is without any valid purpose that it should be excluded. *Id.* As in all evidentiary matters, the admission of photos rests within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *Gates v. State*, 338 Ark. 530, 2 S.W.3d 40 (1999).

The record reflects that the trial court viewed the photos and asked the prosecutor to explain the necessity of admitting both close-up photos of the victim's face. After listening to the prosecutor's explanation, the trial court admitted Exhibit 35 because "it shows the nature and location of the wound and that is definitely relevant in a homicide," and it excluded Exhibit 36 as cumulative. Clearly, the trial court did not use a "carte blanche" approach in its decision in this regard, as appellant has asserted; and, given the basis for his rulings, we cannot say that the trial court abused his discretion in admitting Exhibit 35.

Affirmed.