Curtis Ray HOLLIS *v.* STATE of Arkansas

CR 00-1276                                           55 S.W.3d 756

Supreme Court of Arkansas
Opinion delivered October 4, 2001

*William R. Simpson, Jr.*, Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Curtis Ray Hollis appeals from his judgments of conviction for capital felony murder and aggravated robbery and his sentences of life without parole and thirty years, respectively. His sole issue on appeal is that he was illegally seized by police officers. He contends that this is so because his consent to be seized was involuntary due to the fact that he was not sufficiently informed to allow him to give an intelligent consent. This point is meritless, and we affirm.

At approximately four o'clock a.m. on July 13, 1998, the Exxon service station at the intersection of Roosevelt Road and Interstate 30 in Little Rock was robbed and the clerk on duty, Robert Strawn, was killed. The following facts concerning the events of the robbery and murder are taken from Hollis's statement to Little Rock police officers, which was admitted into evidence, and the trial testimony of his accomplice, Brian Morris. In the early morning hours of July 13, 1998, Hollis, a black man, and Morris, a white man, were across the street from the Exxon station. Morris was talking on a public phone. Both men had been drinking a fruit punch mixed with tequila. During this time, they were seen by a *Democrat-Gazette* newspaper delivery man. Morris had a Butler .22 caliber derringer in his possession, and Morris and Hollis decided to rob the Exxon station. The two men were let into the station by Strawn, and Morris purchased candy, chips, and a soda. Hollis next began to buy certain items. During this transaction, Morris pulled his derringer pistol on Strawn. Morris, believing that Strawn was reaching for a weapon, shot Strawn once in the chest.

After Strawn fell to the ground, Hollis and Morris went behind the counter to the cash register. As they took money from the register, Strawn got up and began struggling with Morris. Hollis took Strawn's .38 caliber revolver from him and shot Strawn twice in the left thigh. Morris shouted for Hollis to kill Strawn, but Hollis did not. Morris eventually took the .38 caliber revolver from Hollis and shot Strawn in the back of the head, killing him.

After a futile search for more money, Hollis and Morris took cigars and a case of lighters from the station. They also took the .38 caliber revolver with them and left the scene in Strawn's own vehicle. They first stopped for gas and then proceeded to travel north on Interstate 30 to Prothro Junction. There, they exited, and Morris dropped Hollis off at the Masters Inn. Morris hid Strawn's vehicle two blocks down the street at the Days Inn. The two men checked into a room at the Masters Inn at about five o'clock a.m.

Shortly after the shooting, Little Rock police units were called to the scene of the robbery and murder. Police officers investigating the crime scene received a tip from the *Democrat-Gazette* worker that a white man and a black man were in the vicinity about the time the crime was committed.

Police officers located Strawn's car roughly twenty-four hours later at the Days Inn in Prothro Junction after receiving a call that a suspicious car seemed to be abandoned. Police officers canvassed the immediate area where the car was found. Across the street from where the car was found, Little Rock Detectives Eric Knowles and Charles Weaver located a hotel clerk at the Masters Inn who told them that a white man and a black man had checked into a room in her hotel around five o'clock a.m. on July 13, 1998, which was an hour after the crime was committed. While the detectives were talking to the clerk, Hollis entered the lobby and then left. The motel clerk identified Hollis as one of the men in question and gave the detectives his room number. After Hollis left the hotel lobby, he went back to his room. A few minutes later, he left his room and proceeded to walk across the street to a Burger King restaurant. After Hollis left the Burger King, he crossed the street to come back to the Masters Inn, and the detectives made contact with him.

Detectives Knowles and Weaver testified at the omnibus hearing about what transpired next. Dressed in suits and ties, the detectives initially identified themselves as homicide investigators. Detective Weaver advised him that they were investigating a homicide. They asked Hollis his name and date of birth, which he supplied. They also asked him to come down to the police station to be questioned but told him that he was under no obligation to do so and that he was not under arrest. Hollis agreed to go with them and was described by one of the detectives as "very cooperative." Hollis was not handcuffed or otherwise restrained and was placed in the detectives' unmarked police car for several minutes. During that time the detectives ran a warrant check on him, which revealed he

had several felony warrants in Pulaski County outstanding for failure to appear in court. After the warrants were found, the detectives arrested and handcuffed Hollis. At about the same time the arrest occurred, Detectives Knowles and Weaver received information from other police officers that they had done a preliminary search of Hollis's and Morris's room at the Masters Inn. They found two guns in the room, a Rossi .38 caliber revolver and a Butler .22 caliber derringer. They also found items that were suspected to be stolen from the Exxon station. Hollis was placed in a marked patrol car and taken to the police station. A few hours later, Hollis was *Mirandized* at the police station. He signed a *Miranda* waiver form and then gave a taped statement in which he admitted his involvement in the robbery and homicide. Subsequently, Hollis was charged with capital murder, aggravated robbery, and theft.

After hearing testimony at the omnibus hearing from Detectives Knowles and Weaver, the circuit court denied Hollis's motion to suppress his statement. The State waived the death penalty for Hollis and proceeded to trial. At his trial, Hollis's statement to police officers was introduced into evidence and the medical examiner, Dr. Frank Joseph Peretti, testified that Strawn died of multiple gunshot wounds. He concluded that both the chest wound and the head wound inflicted by Morris were fatal wounds, but that Strawn could have survived the thigh wounds inflicted by Hollis. Brian Morris testified for the defense that it was he who killed Strawn. After the one-day trial, the jury convicted Hollis of capital felony murder, aggravated robbery, and theft of property. Hollis was sentenced to life without parole for the capital felony murder and thirty years for the aggravated assault, to run concurrently. The circuit court merged the theft conviction with the other two.

Hollis's single point on appeal is that he was illegally seized by the Little Rock detectives because his consent to be questioned was not made knowingly and intelligently. He contends that his consent was invalid because the officers who obtained the consent from him failed to disclose certain facts about their investigation. This is a novel argument. From his motion to suppress, we glean that Hollis did specifically allude to Rule 3.2, which reads:

> A law enforcement officer who has detained a person under Rule 3.1 shall immediately advise that person of his official identity *and the reason for the detention.*

Ark. R. Crim. P. 3.2 (emphasis added). Hollis is now apparently using this rule on appeal as a springboard for his uninformed consent argument. However, he never argued uninformed consent to the circuit court. And the sole legal authority he cites in support of his argument is an inapposite civil case, *Berkeley Pump Co. v. Reed-Joseph Land Co.*, 279 Ark. 384; 653 S.W.2d 128 (1983).

▮▮▮ Ordinarily, our standard of review of a circuit court's decision on suppression of a statement is that this court makes an independent determination based on the totality of the circumstances and will only reverse if the circuit court's decision is against the preponderance of the evidence. *Bunch v. State*, 346 Ark. 33, 57 S.W.3d 124 (2001) (quoting *Wright v. State*, 335 Ark. 395, 983 S.W.2d 397 (1998)); *Lacy v. State*, 345 Ark. 63, 44 S.W.3d 296 (2001). In the instant case, however, Hollis mounts an argument on appeal that he did not specifically make to the circuit court, even though he did cite Ark. R. Crim. P. 3.2 in his motion to suppress. This he cannot do. *See Ferrell v. State*, 325 Ark. 455, 929 S.W.2d 697 (1996) (even in a case in which a sentence of life without parole has been imposed, the appellant is bound by the scope of the argument he made at the trial level); *see also Hill v. State*, 325 Ark. 419, 931 S.W.2d 64 (1996); *Stewart v. State*, 320 Ark. 75, 894 S.W.2d 930 (1995). Moreover, he makes a new and untested argument and fails to cite convincing authority to support it. We have made it exceedingly clear that we will not consider an argument, even a constitutional one, when the appellant presents no citation to authority or convincing argument in its support, and it is not apparent without further research that the argument is well taken. *Dougan v. State*, 330 Ark. 827, 957 S.W.2d 182 (1997); *Williams v. State*, 325 Ark. 432, 930 S.W.2d 297 (1996); *Roberts v. State*, 324 Ark. 68, 919 S.W.2d 192 (1996); *Dixon v. State*, 260 Ark. 857, 545 S.W.2d 606 (1977).

We recognize that in this case Hollis received a sentence of life without parole. In such cases, we are required by our own Supreme Court Rules to review all adverse rulings to Hollis made on motions, objections, and other requests. Ark. Sup. Ct. R. 4-3(h). Rule 4-3(h), however, does not require this court to review an argument not specifically made to the circuit court or to research a novel argument for an appellant who cites no apposite authority.

For the foregoing reasons, the judgment of convictions and sentences are affirmed. The record has been reviewed for other reversible error, as required by Supreme Court Rule 4-3(h), and none has been found.

Affirmed.