Dyrea MOSBY *v.* STATE of Arkansas

CR 01-784                                     85 S.W.3d 500

Supreme Court of Arkansas
Opinion delivered September 19, 2002

*Christopher W. Hays*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellant.

ROBERT L. BROWN, Justice. Appellant Dyrea Mosby appeals his judgment of conviction for capital murder and his sentence of life in prison without parole. He raises two points on appeal which concern whether five photographs introduced by the State were more prejudicial than probative and whether four of those photographs were cumulative. We hold that the trial court did not abuse its discretion in admitting the photographs into evidence, and we affirm.

Between 7:40 a.m. and 8:00 a.m. on August 13, 1999, Officers Michael Donigan and Thomas Wooten, who at that time worked for the Dumas Police Department, were dispatched to the home of Curtis "Cleotis" Binns in Dumas because of a shooting.[1] When they arrived at the home, they found Mosby, who was Binns's stepson, standing in the carport. Mosby told the police officers that someone had shot his stepdad, but he did not know who did it. At that time, his mother, Mary Binns, came out of the

---

[1] Officer Wooten was working for the Springdale Police Department at the time of the trial.

house and said: "No, you shot him." Later, at trial, Mrs. Binns testified that she saw Mosby shoot her husband. Inside the house, Binns was found lying on the bedroom floor with multiple gunshot wounds.

Mosby was then placed under arrest by Officer Donigan. In a burn barrel behind the house, a .38 caliber Titan pistol was found by investigating police officers. Three bullets recovered from the victim were later found to have been fired by that pistol. Binns was transferred to the emergency room of the hospital where the deputy coroner, Jody Wilkins, pronounced him dead. On that same date, August 13, 1999, an autopsy was performed by Dr. William Sturner, Chief Medical Examiner for the State, at the State Crime Lab. Dr. Sturner found five gunshot wounds: one to the hand, two to the head, and two to the trunk area. Dr. Sturner also opined that the bullet passing through Binns's heart and lungs was fatal and the bullet passing through the brain was also fatal.

Mosby was charged with capital murder and felon-in-possession-of-a-firearm. At the ensuing trial, the State moved to introduce seventeen photographs into evidence, five of which are at issue on appeal. Mosby objected to State's Exhibit Six as inflammatory and State's Exhibits Ten, Fifteen, Sixteen, and Seventeen as cumulative and prejudicial. The trial court denied the objections. There were a total of sixteen photographs admitted into evidence. The trial court gave the prosecutor the option of introducing either State's Exhibit Nine or Ten. The prosecutor chose to introduce State's Exhibit Ten and withdraw State's Exhibit Nine. The following is a list of the photographs admitted into evidence and their subjects:

(1).   State's Exhibit One: An autopsy photograph of Binns's face.

(2).   State's Exhibit Two: An autopsy photograph of Binns from the waist up.

(3).   State's Exhibit Three: An autopsy photograph showing a closeup of the hand wound.

(4). State's Exhibit Four: Another autopsy photograph showing a closeup of the hand wound from a different angle.

(5). State's Exhibit Five: The bullets recovered from Binns's scalp and brain.

(6). State's Exhibit Six: An autopsy photograph showing a cross section of Binns's brain.

(7). State's Exhibit Seven: A photograph of the front of the Binns residence.

(8). State's Exhibit Eight: A crime scene photograph showing the bedroom where Binns was killed.

(9). State's Exhibit Nine: Withdrawn by the prosecutor.

(10). State's Exhibit Ten: A photograph of the same bedroom, taken from a different angle and with a closer view of the blood resulting from the head wound.

(11). State's Exhibit Eleven: A photograph of a bullet lying on the floor of Binns's bedroom.

(12). State's Exhibit Twelve: A photograph of another bullet lying on the floor in Binns's closet.

(13). State's Exhibit Thirteen: A closeup of the bullet in the closet.

(14). State's Exhibit Fourteen: A photograph of the backyard of the Binns residence. The photograph shows the burn barrel where police officers found the murder weapon.

(15). State's Exhibit Fifteen: A photograph taken at the emergency room showing the right side of Binns's body and the head wound just after he was pronounced dead.

(16). State's Exhibit Sixteen: An emergency room photograph showing the left side of Binns's body, the wound to his left arm, and a bagged hand.

(17). State's Exhibit Seventeen: A closeup of Binns's head taken at the emergency room.

Mosby was convicted of capital murder and sentenced to life without parole.

■ Mosby first contends that the photographs marked Exhibits Six, Ten, Fifteen, Sixteen, and Seventeen were inflammatory and more prejudicial than probative and that State's Exhibits Ten, Fifteen, Sixteen, and Seventeen were also cumulative. The controlling Rule of Evidence which he relies on is Rule 403, which states that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Ark. R. Evid. 403. The admissibility of photographs lies in the sound discretion of the trial judge and will not be reversed absent an abuse of discretion. *Davis v. State*, 350 Ark. 22, 86 S.W.3d 872 (2002); *Barnes v. State*, 346 Ark. 91, 55 S.W.3d 271 (2001). We, therefore, examine the issues on appeal using an abuse-of-discretion standard.

■ ■ Last year, this court summarized the law regarding admissibility of photographs:

> When photographs are helpful to explain testimony, they are ordinarily admissible. Further, the mere fact that a photograph is inflammatory or is cumulative is not, standing alone, sufficient reason to exclude it. Even the most gruesome photographs may be admissible if they assist the trier of fact in any of the following ways: by shedding light on some issue, by proving a necessary element of the case, by enabling a witness to testify more effectively, by corroborating testimony, or by enabling jurors to better understand the testimony. Other acceptable purposes are to show the condition of the victims' bodies, the probable type or location of the injuries, and the position in which the bodies were discovered. Absent an abuse of discretion, this court will not reverse a trial court for admitting photographs into evidence.

Barnes, 346 Ark. at 105, 55 S.W.3d at 281 (citations omitted). *See also Davis v. State, supra.* The trial court, accordingly, must exercise *some* discretion in its decisionmaking regarding the admissibility of State photographs. Stated differently, the trial court cannot simply give *carte blanche* to the admission of any and all photographs of the crime scene and victim offered by the prosecutor, as that would be a failure to exercise discretion. *See Berry v. State,*

290 Ark. 223, 718 S.W.2d 447 (1986). In *Berry*, the trial court exercised no discretion and received all offered photographs into evidence, including graphic and repetitive photographs. In doing so, the court failed to perform a Rule 403 analysis of whether the photographs were more probative than prejudicial. *See id.* For that reason, we reversed the judgment of conviction.

■ In the instant case, Mosby claims that State's Exhibit Six, showing a cross-section of Binns's brain, was unfairly inflammatory and prejudicial, because seeing a photograph of a human brain could easily cause a reasonable person to resort to a verdict based on emotion. We disagree because we conclude that State's Exhibit Six could assist the trier of fact. The photograph was introduced to corroborate Dr. Sturner's testimony about the path of the bullet through Binns's brain and the fact that the wound contained necrotic tissue. Dr. Sturner further testified that Exhibit Six shows the bullet or bullet fragment as well as a white arrow pointing to the necrosis resulting from the wound. We conclude that the photograph, in corroborating the medical examiner's testimony, was more probative than prejudicial.

■ The same holds true for State's Exhibit Ten, which is a photograph, according to Officer Donigan, showing blood on the bedroom floor from Binns's head wounds as well as "human debris" sprayed on the wall. This photograph shows the crime scene at close range where the body fell and from a different angle. It also confirms Officer Donigan's testimony about the position of the body and the testimony of Mary Binns and Latara, her daughter, all of whom stated that they saw Binns's body lying on the floor of his bedroom. As for the objection that this photograph is cumulative, each of the submitted photographs shows the crime scene from a different perspective, and new details of the room, blood, and body are visible in each photograph. Again, we hold that the trial court did not abuse its discretion in receiving this photograph into evidence.

■ The three photographs that show Binns's body in the emergency room (State's Exhibits Fifteen, Sixteen, and Seventeen) also corroborate Officer Donigan's testimony. He testified that he

recorded his observations in the emergency room of the hospital by camera. The photographs show different angles of Binns's body close in time to the shooting and before the body underwent an autopsy. State's Exhibit Fifteen shows the right side of Binns's body and a head wound. State's Exhibit Sixteen shows the left side of Binns's body, a wound to his left arm caused by a bullet passing through his chest, and his bagged hand. State's Exhibit Seventeen is a closeup photograph of Binn's head wound. We cannot say that these photographs were not helpful to the jury in understanding Binns's condition after the multiple gunshots. Accordingly, we agree with the trial court that these photographs were also more probative than prejudicial.

Unlike the situation that occurred in *Berry*, in the case at bar, the trial court did not agree to a *carte blanche* introduction of all state photographs without a Rule 403 analysis. Rather, the court exercised its discretion and in one case advised the prosecutor to choose between two photographs that appeared to be similar. The prosecutor withdrew one of those photgraphs.

We hold, then, that gruesome though the challenged photographs may have been and arguably cumulative in some instances, they were reviewed by the trial court and served to assist the trier of fact in understanding the testimony. For those reasons, their introduction into evidence did not constitute an abuse of discretion on the part of the trial court.

A review of the record has been conducted in accordance with Arkansas Supreme Court Rule 4-3(h), and no reversible error has been found.

Affirmed.