Jason E. WINBUSH *v.* STATE of Arkansas

CA CR 02-864                     107 S.W.3d 882

Court of Appeals of Arkansas
Division II
Opinion delivered May 28, 2003

*Julia J. Llewellyn*, for appellant.

*J. Leon Johnson*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.

K AREN R. BAKER, Judge. A Sebastian County jury convicted appellant, Jason E. Winbush, of murder in the first degree and sentenced him to a term of forty-five years in the Arkansas Department of Correction. Appellant asserts six points on appeal: (1) The trial court erred when it did not instruct the jury they could find the appellant guilty of negligent homicide; (2) the trial court erred when it did not declare a mistrial during voir dire; (3) the trial court erred when it allowed the prosecutor to introduce evidence of appellant's seven prior felonies; (4) the trial court erred in allowing the introduction of three photographs of the victim lying in the grass; (5) the trial court erred when it allowed the hearsay testimony of Detective Mikeal Bates; (6) there was insufficient evidence to find appellant guilty of murder in the first degree. We affirm.

*There was insufficient evidence to find appellant guilty of murder in the first degree.*

Although appellant raises a challenge to the sufficiency of the evidence in his sixth point of appeal, double jeopardy considerations require us to consider it first. *See Ramaker v. State*, 345 Ark. 225, 46 S.W.3d 519 (2001). In evaluating a sufficiency-of-the-evidence argument, the court will only consider evidence supporting the verdict and "the testimony of one eyewitness alone is sufficient to sustain a conviction." *Lenoir v. State*, 77 Ark. App. 250, 257, 72 S.W.3d 899, 903 (2002). Decisions regarding the credibility of witnesses are for the jury, and the jury is not required to believe any witness's testimony, especially the testimony of the accused, because he is the person most interested in the outcome of the trial. *Hickson v. State*, 50 Ark. App. 185, 901 S.W.2d 868 (1995).

■ ■ Appellant was convicted of first-degree murder. A person commits murder in the first degree if, "[w]ith a purpose of causing the death of another person, he causes the death of another person." Ark. Code Ann. § 5-10-102(a)(2) (Repl. 1997). "A person acts purposely with respect to his conduct or a result thereof when it is his conscious object to engage in conduct of that nature or to cause such a result." Ark. Code Ann. § 5-2-202 (Repl. 1997). A criminal defendant's intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. *Leaks v. State*, 345 Ark. 182, 184, 45 S.W.3d 363, 365 (2001). Furthermore, a jury may infer the intent necessary for first-degree murder from the type of weapon used, the manner of its use, and the nature, extent, and location of the wounds. *Id.*

At appellant's trial, the State introduced the testimony of four eyewitnesses who saw the appellant shoot Mr. Walls. Levi Whitson, a ten-year-old boy who lived across the street from where the shooting occurred, testified that he saw appellant and the deceased arguing. He described how Mr. Walls turned his back and started to walk away. After Mr. Walls turned away, appellant retrieved something from under the seat of his car, said something to Mr. Walls, and when Mr. Walls turned around, appellant shot him.

Levi's mother, Charla Whitson, also witnessed the shooting. She testified that she was standing at her kitchen window watching her son ride his skateboard when she saw him standing frozen at the end of the driveway, looking across the street. She saw a white Cadillac parked in front of the house across the street, and she saw appellant walking from the driver's side of the car into the driveway. Ms. Whitson did not hear any conversation, but she saw Mr. Walls turn around, apparently with his hands raised and opened out. As Mr. Walls turned around, appellant raised his gun and fired two shots.

The other two eyewitnesses to the shooting were Leo Cole and Jeffrey Mainer, who also lived in the neighborhood. Mr. Cole testified that he went to look out his window after hearing a pop that sounded like a firecracker. He then heard a second gunshot and saw Mr. Walls fall to the ground. He further testified that

the only gun he saw was the one held by appellant. Similarly, Mr. Mainer looked out of this window after hearing a gunshot. He saw appellant with his arms extended over the roof of a white Cadillac, and he heard a second shot. In addition to the testimony of these witnesses, the appellant testified that he was upset with Mr. Walls for spreading the rumor that he was a homosexual.

■ From this evidence the jury could reasonably infer that appellant acted with a conscious desire to kill Mr. Walls. Although appellant's version of the events differed from that of the eyewitnesses, the jury was not required to believe to him. *Hickson,* 50 Ark. App. at 187, 901 S.W.2d at 869. Therefore, substantial evidence supports his conviction for first-degree murder.

*The trial court erred when it did not instruct the jury they could find the appellant guilty of negligent homicide.*

■ Appellant argues that the trial court erred by refusing to instruct the jury to consider negligent homicide as a lesser-included offense of manslaughter. The court instructed the jury to consider appellant's guilt according to instructions for first-degree murder, second-degree murder, and both "extreme emotional disturbance" manslaughter, and reckless manslaughter. However, the jury convicted appellant of first-degree murder. When the jury convicts of a greater offense and "skips" a lesser-included offense, there can be no error in failing to instruct on other even lesser-included offenses. *Rainey v. State,* 310 Ark. 419, 837 S.W.2d 453 (1992). Therefore, it was not error for the court to refuse the instruction on negligent homicide.

*The trial court erred when it did not declare a mistrial during voir dire.*

■ Appellant also argues that the court should have declared a mistrial during voir dire. A circuit court has wide discretion in declaring a mistrial, and we will not disturb the trial court's decision absent an abuse of discretion or manifest prejudice to the movant. *Brown v. State,* 347 Ark. 308, 65 S.W.3d 394 (2001). During voir dire, a prospective juror, Mr. Mike Brooks, stated he was retired from the Fort Smith Police Department and knew the defense attorney from working with him in the past

when the attorney was a deputy prosecutor. He stated that he also knew appellant from the past. Appellant asserts that these statements connected appellant in the minds of the jury to a criminal past and prejudiced the jury panel against him, thus denying him a fair trial. In the alternative, he argues that the trial court should have admonished the prospective jurors to disregard the comments of Mr. Brooks.

The prospective juror's comment may have suggested that appellant had a criminal record. However, even if the panel drew that inference from Mr. Brooks's remark, it was not solicited by the prosecutor and, like cases involving more explicit references to arrests or convictions, any prejudice could have been cured by an admonition to the jury. *Jones v. State*, 349 Ark. 331, 338, 78 S.W.3d 104, 109 (2002) (suggesting that admonition could have cured prejudice resulting from witness's reference to defendant's being on parole). Nevertheless, appellant did not request an admonition. His failure to request an admonition cannot benefit him now. *Barnes v. State*, 346 Ark. 91, 104, 55 S.W. 3d 271, 280 (2001), *cert. denied*, 535 U.S. 1022 (2002). Furthermore, the failure to give an admonition or cautionary instruction is not error where none is requested. *Id.*

*The trial court erred when it allowed the prosecutor to introduce evidence of appellant's seven prior felonies.*

Appellant also argues that he was prejudiced when the trial court allowed the State to introduce seven prior felony convictions. He argues that the State only had to prove appellant committed four felonies to prosecute him as an habitual offender under Ark. Code Ann. § 5-4-501 (Repl. 1997) and that the additional convictions unnecessarily prejudiced appellant in the minds of the jury when they deliberated his sentence. Appellant cites no authority for this proposition, and we do not consider an argument when the appellant presents no authority or convincing argument in its support, and it is not apparent without further research that the argument is well taken. *Hollis v. State*, 346 Ark. 175, 179, 55 S.W.3d 756, 759-60 (2001); *Dougan v. State*, 330 Ark. 827, 957 S.W.2d 182 (1997); *Williams v. State*, 325 Ark. 432,

930 S.W.2d 297 (1996). Therefore, we affirm on this point as well.

*The trial court erred in allowing the introduction of photographs of the victim lying in the grass.*

We also find no error with the trial court's admission of photographs of the victim at the scene of the shooting. Appellant argues that the State had already introduced photographs of the deceased from the autopsy that showed the location of the bullet wounds and other photographs of the scene of the shooting which showed the location of the body before it was moved. He dismisses the prosecutor's claim that in the autopsy photographs, the blood had been cleaned off of the victim, and asserts that the State's desire to show that the victim had been bleeding from the nose and mouth did not make the photographs admissible. He claims that the photographs were cumulative, served no valid purpose, and were only used to inflame the jury's passions.

As in all evidentiary matters, the admission of photographs rests within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *Gates v. State*, 338 Ark. 530, 541, 2 S.W.3d 40, 46-47 (1999). Even the most gruesome photographs may be admissible if they tend to shed light on any issue, to corroborate testimony, or if they are essential in proving a necessary element of a case, are useful to enable a witness to testify more effectively, or enable the jury to better understand testimony. *Weger v. State*, 315 Ark. 555, 869 S.W.2d 688 (1994).

The photographs here helped the jury understand the testimony of the witnesses who arrived shortly after the shooting and observed Mr. Walls's condition at the scene. Ray Whitson, an off-duty police officer and father of Levi Whitson, who lived across the street, testified that Mr. Walls had blood coming from his nose and mouth and that he had difficulty breathing. Scott Barr, the first responder who treated Mr. Walls at the scene, testified that he had gunshot wounds to his chest and back and that he had blood coming from his mouth. Because these photographs corroborate Mr. Whitson's and Mr. Barr's testimony about Mr.

Walls's condition at the scene and help the jury understand their testimony, the trial court did not err in admitting them. *See Mosby v. State*, 350 Ark. 90, 97, 85 S.W.3d 500, 503-04 (2002)(finding photographs more probative than prejudicial where they corroborated testimony of police officer who observed victim's wounds prior to autopsy). We find no danger of unfair prejudice in the admission of the photographs.

> *The trial court erred when it allowed the hearsay testimony of Detective Mikeal Bates.*

Appellant's final point for discussion asserts that Detective Mikeal Bates's testimony that appellant and the victim had an altercation the night before the shooting was inadmissible hearsay. We agree that it was hearsay, but hold that the error was harmless given the overwhelming evidence supporting appellant's conviction.

■ ■ A trial court has wide discretion in evidentiary rulings, and its ruling on a hearsay question will not be reversed unless the appellant can demonstrate an abuse of discretion. *E.g., Peterson v. State*, 349 Ark. 195, 200, 76 S.W.3d 845, 847 (2002). An out-of-court statement offered to explain a police officer's actions during an investigation is not hearsay. *See Martin v. State*, 316 Ark. 715, 875 S.W.2d 81 (1994).

At trial, Detective Bates testified that as a part of the murder investigation, he also investigated an alleged altercation which occurred between appellant and the victim the night before the shooting. No witnesses to the alleged altercation testified. The trial court allowed the testimony as an exception to the hearsay rule, admitting the testimony to show why the detective investigated the incident rather than for the truth of the matter asserted.

■ ■ Although the State argues that the statement was offered to explain the officer's actions, this argument does not address why an explanation for the officer's action was required. Nor does a review of the abstract demonstrate that the evidence was offered in the context of explaining a course of conduct. We must, therefore, conclude that the statement was offered for the truth of the matter asserted and should have been excluded as hearsay. However, the witness merely testified to the existence of

an altercation. Where the evidence of guilt is overwhelming and the error allowing the admission of hearsay evidence is slight, we can declare the error harmless and affirm. *E.g.*, *Proctor v. State*, 349 Ark. 648, 79 S.W.3d 383 (2002). Four eyewitnesses testified that they saw appellant shoot the victim, and the appellant himself testified that he drove to the location of the shooting to confront the victim about the defamatory statements. With such overwhelming evidence of appellant's guilt, the error was harmless. Therefore, no reversible error occurred.

Accordingly, we affirm.

HART, J., agrees.

GRIFFEN, J., concurs.

WENDELL L. GRIFFEN, Judge, concurring. I concur because I agree with my colleagues to affirm the trial court, but wish to express my concerns regarding what I perceive to be a very liberal standard in matters of admitting photographic evidence. This case illustrates the need to tighten that standard.

The current standard applying to the issue of admissibility of photographs is quickly summarized. Generally, the admission of photographs rests within the sound discretion of the trial court, and we do not reverse absent an abuse of discretion. *Gates v. State*, 338 Ark. 530, 2 S.W.3d 40 (1999). The mere fact that a photograph might be considered inflammatory or cumulative is not, by itself, enough to exclude it. *Ramaker v. State*, 345 Ark. 225, 46 S.W.3d 519 (2001). Notably, there exist feasible reasons why such photographs might remain admissible, even images showing repulsive human gore, namely if they help the jury to understand accompanying testimony. *Id.* In that vein, our supreme court held that photographs showing a brain cross-section were admissible in support of a medical examiner's testimony as well as photos showing "human debris sprayed on the walls" in corroboration of a police officer's testimony regarding the position of the victim's body. *Mosby v. State*, 350 Ark. 90, 85 S.W.3d 500 (2002).

However, I maintain that this same standard leads our trial courts, and us on appeal, to allow virtually everything. In this case, for instance, the State introduced photographs showing Walls

lying dead in the grass, bleeding from his mouth and head due to gunshot wounds. The prosecutor argued that she was entitled to present photographs to the jury because this was a first-degree murder trial and the other photos of Walls's body were taken after it was cleaned. Allegedly, this was needed to corroborate available witness testimony and police testimony. Given the liberal standard already mentioned, the fact that admission of these images lay within the sound discretion of the trial judge, and that we would have to find an abuse of discretion on the part of the trial judge, we are obliged to affirm the trial court on this point.

However, I find the State's argument unintelligible because I see no probative value in the particular photographs merely to corroborate what everyone already knew and what was not in dispute. The victim was dead. There were eyewitnesses describing how appellant shot the victim in his front yard. Notwithstanding his different version of events, appellant admitted as much. The jury had available photographs from the crime laboratory, and thus saw the victim's dead body and the wounds in question, albeit "cleaned up." Whether a dead body bleeds from the mouth and gunshot wounds or not appears of little relevance to the actual questions involved in this first-degree murder charge. There was no dispute as to the location of the homicide, or the respective positions of appellant and the victim, or the final position of the victim's dead body. The State did not even argue that the blood-and-gore images were necessary to arrive at any conclusions involving blood-spatter patterns and positions.

In light of existing case law, we affirm even though it appears to me that the true reason why these photographs were introduced lay in an attempt to further sway the jury against the perpetrator. No other reason was truly advanced or presents itself for our review. In this context, it also appears interesting that any such attempt on the part of the prosecution appears unnecessary in light of the overwhelming evidence against appellant. Thus, I believe that this case proves the need to tighten the existing standard regarding the admission of photographs.