Frederick GOODMAN *v.* STATE of Arkansas

CA CR 00-1264                                            45 S.W.3d 399

Court of Appeals of Arkansas
Division I
Opinion delivered May 16, 2001

*Robert L. Herzfeld, Jr.*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Michael C. Angel*, Ass't Att'y Gen., for appellee.

JOSEPHINE LINKER HART, Judge. A jury found Frederick Goodman guilty of attempted manufacture of a controlled substance (methamphetamine) and possession of drug paraphernalia and sentenced him to a total of 180 months in the Arkansas Department of Correction. For reversal, appellant argues that (1) there was insufficient evidence to sustain his convictions and, accordingly, the trial court erred by denying his directed-verdict motion; (2) his rights under the Fourth and Fourteenth Amendments were violated and the trial court erred in denying his suppression motion; and (3) the trial court erred by denying his motion for a continuance. Although we agree that appellee failed to demonstrate that there was apparent authority to justify the warrantless search, we conclude that the consenting party had actual authority, and because we do not find any other errors of law, we affirm.

A criminal information was filed on September 22, 1999, alleging that on March 4, 1999, appellant manufactured methamphetamine and possessed drug paraphernalia. Thereafter, appellant moved to suppress evidence seized at his trailer home. On May 11, 2000, prior to the trial, the court heard appellant's motions for a continuance and suppression of evidence.

The trial court addressed the continuance motion first. Appellant told the court that he was dissatisfied with his legal counsel[1] and thought that he had failed to prepare for the trial. His attorney responded by telling the court that appellant had failed to be cooperative in the preparation of a defense and, as such, asked to be relieved as counsel. The trial court, while acknowledging the attorney's predicament, denied the request to be relieved as counsel. In addition, the trial court noted that appellant had more than six months to work with his attorney to organize a viable defense and had failed to do so. Accordingly, the trial court also denied the continuance motion.

Thereafter, the trial court considered the motion for suppression and heard the testimonies of Corporal Allen Brand, Cecilia Mashburn, and appellant.

Corporal Brand testified that he arrived at appellant's home on March 4, 1999, in response to a terminated 911 call in which a woman was screaming for help and, upon arrival, found Cecilia Mashburn in the front yard. Although Mashburn lacked any visible signs of injury and appellant only stood in his doorway, Brand forced appellant to the ground at gunpoint and restrained him with handcuffs. Brand then stated that Mashburn told him that appellant had been "cooking the meth" in the home, verbally consented to a search, and led him to the back bedroom in the trailer. While in this bedroom, Brand, without direction from Mashburn, searched underneath a mattress and found a "meth lab."

Mashburn told the court that she had lived at appellant's residence off-and-on for approximately nine months, and although she did not have a permanent residence, she considered herself a guest in appellant's home. She further testified that when the police arrived at appellant's home, she informed the police that appellant was "cooking dope" and consented to the search of the trailer.

---

[1] Appellant was represented on appeal by a different attorney.

Appellant testified last and stated that Mashburn was merely a guest in his home and did not have authority to consent to a search by police. In fact, according to appellant, he specifically told Mashburn that she did not have permission to consent to such a search.

The trial court denied the suppression motion, reasoning that it was reasonable for the police to believe that Mashburn possessed authority to grant the search and that, additionally, she in fact had such authority in light of the amount of time she resided at appellant's trailer and the fact that she had no other residence. The case immediately proceeded to trial.

At trial, in addition to the testimony she gave at the suppression hearing, Mashburn testified that prior to March 3, 1999, the day before appellant's arrest, she had lived in his home while he had been incarcerated. Moreover, with regard to March 3rd, she testified that she, Craig DePriest, and appellant were living in appellant's home. During that evening, appellant admitted to Mashburn that he and DePriest were producing drugs in the trailer's back bedroom. Sometime during the night, appellant's daughter called, reporting that she was having a baby. When appellant was awakened, he thought that DePriest and Mashburn were engaging in sexual activity and became angry. Both Mashburn and DePriest fled from the trailer, but appellant was able to catch Mashburn and brought her back to the trailer. Appellant then began to hit and curse her periodically until Mashburn called 911, said "help," hung up the telephone, and turned it off. Thereafter, the police arrived at which time Mashburn told the police about appellant's drug manufacturing and consented to the police search.

In addition to giving testimony substantially similar to the testimony he gave during the suppression hearing, Corporal Brand testified that he and Officer Chris Moore found the following in the bedroom: a hot plate, pair of scales, two soda bottles connected by a hose taped to both bottles, a substance that was growing in one of the two soda bottles, and a gallon container containing a substance. Officer Moore then testified and confirmed much of what Brand told the jury. Moore, however, confirmed that Brand had sought consent to search the trailer from Mashburn, who, in fact, gave her consent. Finally, Dan Hedges, a forensic chemist at the Arkansas State Crime Laboratory, testified that based on his expertise, training, and experience, the contents of the trailer found by the police comprised a working methamphetamine laboratory.

At that time, the State rested, and appellant moved for a directed verdict, arguing that the State had failed to prove that appellant was the person who actually manufactured the illegal substances. The trial court, without comment, simply denied the directed-verdict motion. Whereupon, appellant renewed his suppression motion, which was also summarily denied.

Appellant's sister, Ginger Gunner, was the only witness called for the defense. She testified that she and her sister owned the property where appellant was living and that Mashburn had been living with appellant off and on for the last five or six years. Gunner also stated that prior to March 3rd, Mashburn had lived in the trailer with her children for approximately four months while appellant had been incarcerated.

Following Gunner's testimony, appellant rested. Thereafter, a jury found appellant guilty and sentenced him to serve concurrent terms of 120 months for attempted manufacture of a controlled substance and sixty months for possession of drug paraphernalia. From these convictions, comes this appeal.

## I. Sufficiency of the evidence

In an effort to avoid potential double-jeopardy concerns on remand, we do not consider errors by the trial court until we first consider a challenge to the sufficiency of the evidence. *See Harris v. State*, 284 Ark. 247, 249-250, 681 S.W.2d 334, 335 (1984). On this point, appellant argues for reversal that the trial court erred by denying his directed-verdict motion because there was insufficient evidence to sustain the convictions of attempted manufacture of methamphetamine or possession of drug paraphernalia. Our review is governed by the standard expressed in *Flowers v. State*, 342 Ark. 45, 48, 25 S.W.3d 422, 425 (2000) (citations omitted), which stated:

> A motion for a directed verdict is a challenge to the sufficiency of the evidence. The test for such motions is whether the verdict is supported by substantial evidence, direct or circumstantial. Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. On appeal, we review the evidence in the light most favorable to the appellee and consider only the evidence that supports the verdict.

The trial judge plainly denied appellant's directed-verdict motion; however, he did so without stating the basis for his determination. Accordingly, we must ascertain whether the evidence offered in light of the applicable standard of review presented a viable question of fact to be decided by the jury. We conclude that a viable question of fact existed and agree that denial of the directed-verdict motion was proper.

■ Rule 801(d)(2)(i) of the Ark. R. Evid. provides that a statement of a party that is "his own statement, in either his individual or representative capacity . . ." constitutes nonhearsay. While appellant concedes that Mashburn's testimony concerning his admission is evidence that he committed the crimes, he argues that pursuant to *King v. State*, 323 Ark. 671, 916 S.W.2d 732 (1996), this evidence was insufficient because it constituted uncorroborated accomplice testimony. In response, appellee argues that appellant is procedurally barred from raising this argument, commensurate with *Jones v. State*, 318 Ark. 704, 712, 889 S.W.2d 706, 709 (1994), inasmuch as it is being raised for the first time on appeal. We agree with appellee. While it is true that appellant argued in his directed-verdict motion that the State failed to prove that he actually manufactured the illegal substance, it is also true that appellant failed to raise the issue of uncorroborated accomplice testimony at that time. As such, we are disposed to conclude that the nonhearsay testimony was sufficient evidence to present the matter to the jury and affirm on this point.

## II. Unreasonable search and seizure

For his next argument, appellant contends that he was denied his right to be free from unreasonable searches and seizures. Specifically, he argues that the trial court erred by denying his motion to suppress the items seized as a result of the warrantless search. Appellee, however, argues that the search and seizure was reasonable inasmuch as it was conducted commensurate with a lawful consent of a third party.

■ Our standard of review of suppression motions is well-settled — if, following an independent determination based on the totality of the circumstances, we conclude that a denial of a suppression motion was not clearly against the preponderance of the evidence, then we will affirm. *E.g., Welch v. State*, 330 Ark. 158, 164, 955 S.W.2d 181, 183 (1997). In our view, the trial court's finding

that the search and seizure at issue was reasonable was not clearly erroneous. Thus, we affirm.

▉ ▉ The right tu be free from unreasonable searches and seizures is guaranteed by both the Bill of Rights, U.S. Const., amend. 4, and the Arkansas Constitution, Ark. Const. art. 2, § 15. This right is personal in nature, *Rakas v. Illinois*, 439 U.S. 128, 133 (1978), and "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment . . . ." *Katz v. United States*, 389 U.S. 347, 357 (1967). Specifically, "searches and seizures inside a home without a warrant are presumptively unreasonable [and] . . . [i]n terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house." *Payton v. New York*, 445 U.S. 573, 586, 590 (1980). These principles are "subject only to a few specifically established and well-delineated exceptions." *Katz*, 389 U.S. at 357. For example, searches based on voluntary third-party consent can be considered reasonable. *See United States v. Matlock*, 415 U.S. 164 (1974).

▉ Under *Matlock*, however, for the consent to be valid, the party giving the consent must have "common authority" over the premises. *Matlock*, 415 U.S. at 171. Moreover, this "common authority" requirement cannot be inferred because "the burden of establishing . . . common authority rests upon the State." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). As the high Court went on to explain:

> [W]hat we hold today does not suggest that law enforcement officers may always accept a person's invitation to enter premises. Even when the invitation is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry. As with other factual determinations bearing upon search and seizure, determinations of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment . . . 'warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises?" *Terry v. Ohio*, 392 U.S. 1 (1968). If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid.

*Rodriguez*, 497 U.S. at 188-189. Accordingly, for appellee to prevail, it must demonstrate that the facts available to the officer at the

moment would warrant a person of reasonable caution in the belief that the consenting party had authority over the premises or, alternatively, that the consenting party had actual authority to grant the consent.[2]

### 1. Apparent authority

▮ To determine whether the police officers had a reasonable caution in the belief that Mashburn had authority over the premises (*i.e.*, apparent authority), we must first establish that the warrantless search was based on a mistake of fact, not a mistake of law. *See United States v. Whitfield*, 939 F.2d 1071, 1073 (1991). Stated differently, *Rodriguez* "applies to situations in which an officer would have had a valid consent to search if the facts were as he reasonably believed them to be." *Whitfield*, 939 F.2d at 1074. *See also Grant v. State*, 267 Ark. 50, 589 S.W.2d 11 (1979). The measure of reasonableness requires, of course, a review of the information available to the officer at the moment the third-party consent was given. While it is possible that the officer's observations alone can substantiate a determination that an officer reasonably believed that the consenting party had common authority, "sometimes the facts known by the police cry out for further inquiry, and when this is the case it is not reasonable for the police to proceed on the theory that 'ignorance is bliss.' " 3 Wayne R. LaFave, *Search and Seizure* § 8.3(g) at 749 (3rd ed. 1996).

▮ Here, the observations of the officer who received the third-party consent were insufficient to sustain a conclusion that he reasonably believed that the consenting party had common authority over the premises that was searched. According to the officer's testimony, the only matters he observed were: (1) a woman who was standing in the front yard of appellant's house, (2) who he may have reasonably believed made a terminated 911 telephone call, and (3) who stated that appellant was manufacturing a controlled substance in a certain room in the house. We conclude that these scant pieces of information were legally insufficient to sustain a warrantless search based on apparent authority. Whether purposefully or innocently, the officer remained ignorant of critical information that would have provided a better insight into whether a third-party

---

[2] This standard, which is an objective/subjective mixture, is reflected in Ark. R. Crim. P. 11.2(c), which provides that for a third-party consent to search a premises to be effective, it must be made "by a person, [who,] by ownership or otherwise, is apparently entitled to give or withhold consent."

consent would be valid or whether a search warrant should be obtained.

■ The better practice in this case would have been for the officer to make additional inquiries to determine the consenting party's relationship to the premises. Because that was not done, we can only consider the officer's observations to which he testified in reaching a conclusion as to whether a person of reasonable caution would have also believed that the consenting party had authority over the premises. Accordingly, on a review of the entire evidence, we are left with a definite and firm conviction that the finding that Mashburn had apparent authority was clearly against the preponderance of the evidence. We, therefore, hold that under the Fourth Amendment and Ark. Const. art. 2, § 15, there was a lack of apparent authority to justify the government's warrantless search of appellant's home. As such, we now turn to the question of whether the consenting party had actual authority.

## 2. Actual authority

■ A conclusion that the consenting third party had actual authority rests on a determination of whether this party had common authority over the premises that was subject to the warrantless search. Moreover, as stated in *Matlock*, 415 U.S. at 172 n.7 (citations omitted):

> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

■ Here, the general consensus was that Mashburn lived in appellant's home[3] for an extended period of time. That evidence

---

[3] Whether appellant actually owned the trailer in which he lived is unclear. Gunner testified that she and her sister owned "the property," but she did not state that they also owned the trailer. Our decision, however, is not colored by appellant's potential lack of ownership of the trailer because it is unquestioned that appellant - either as owner, lessee,

alone, however, is ordinarily insufficient because the simple statement that one is "living" in a particular place, does not by itself provide sufficient insight into the nature of the living arrangement, which under *Matlock* is critical to determine whether one's mutual use is sufficient to permit a warrantless search. Nevertheless, we are satisfied that appellee has met its burden. The testimony of Mashburn and Gunner reveals that prior to March 3, 1999, Mashburn lived in the trailer for at least two months while appellant was incarcerated on a different matter. This evidence is in direct conflict with appellant's contention that Mashburn was a mere guest in his home. The evidence demonstrates that the living arrangement was such that Mashburn did in fact have mutual use of the property. To conclude otherwise could not be reconciled with her exclusive use of the trailer. Accordingly, we do not conclude that the trial court's determination that Mashburn had actual authority was clearly erroneous. We, therefore, affirm on this point.

### III. Continuance

For his final argument, appellant argues that the trial court erred by denying his motion for a continuance. We, however, disagree with appellant and affirm on this point.

Rule 27.3 of the Arkansas Rules of Criminal Procedure provides that "[t]he court shall grant a continuance only upon a showing of good cause and only for so long as is necessary, taking into account not only the request or consent of the prosecuting attorney or defense counsel, but also the public interest in prompt disposition of the case." Moreover, absent an abuse of discretion, we will affirm a trial court's denial of a motion for continuance. *See Morgan v. State*, 333 Ark. 294, 971 S.W.2d 219 (1998).

Here, appellant sought a continuance because he had failed to communicate with his attorney in order to prepare for trial. However, the record reveals that the trial court had previously granted a continuance motion because the appellant was unprepared to present his defense. Although the trial court shall grant a continuance upon a showing of good cause, the court must also endeavor to bring about a prompt resolution of the case. In this

licensee, or otherwise – made this trailer his home, and "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511 (1961).

regard, we do not conclude that the trial court abused its discretion by denying appellant's motion and requiring the matter to proceed to trial on the scheduled date. To conclude otherwise would reward appellant for his unreasonable inaction and be contrary to the well-settled principle that "failure to exercise due diligence alone can be the basis to deny a motion for a continuance." *Jones v. State*, 317 Ark. 131, 137, 876 S.W.2d 262, 265 (1994). Accordingly, we also affirm on this point.

Affirmed.

STROUD, C.J., and CRABTREE, J., agree.