Antonio LENOIR *v.* STATE of Arkansas

CA CR 01-849 72 S.W.3d 899

Court of Appeals of Arkansas
Division IV
Opinion delivered May 1, 2002

*Daggett, Donovan, Perry & Flowers, PLC*, by: *Joe R. Perry*; and *Durrett & Coleman*, by: *Gerald A. Coleman*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., and *David J. Davies*, Ass't Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. Appellant Antonio Lenoir was convicted by a jury of first-degree murder and sentenced to thirty-five years in prison. Mr. Lenoir now appeals, raising four points for reversal.

Mr. Lenoir's first argument is that he was denied a fair trial when the trial court excluded the testimony of his expert witness on cross-racial identification. His second argument is that the trial court erred in refusing his proffered jury instruction on the issue of cross-racial identification. Next, he contends that there was insufficient evidence to support the verdict. Finally, Mr. Lenoir raises three evidentiary issues. Under this point on appeal, he asserts that the trial court erred in excluding photographs of him, in granting the State's motion to exclude evidence that purported to incriminate others, and in failing to exclude the testimony of a rebuttal witness who was present in the courtroom during trial. We affirm.

The preservation of an appellant's right to freedom from double jeopardy requires a review of the sufficiency of the evidence prior to a review of any asserted trial errors. *Young v. State*, 316 Ark. 225, 871 S.W.2d 373 (1994). The test for determining the sufficiency of the evidence is whether the verdict is

supported by substantial evidence, direct or circumstantial. *Atkinson v. State*, 347 Ark. 336, 64 S.W.3d 259 (2002). Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *Goodman v. State*, 74 Ark. App. 1, 45 S.W.3d 399 (2001). In reviewing the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Wilson v. State*, 332 Ark. 7, 962 S.W.2d 805 (1998).

Officer George Pettigrew of the Wynne Police Department testified for the State. He stated that he received a call about a problem at City Liquor in Wynne at about 8:05 p.m. on September 23, 1997. Upon arriving at the scene, he found Joe Cannon, who was bent over on one knee and advised that he had been shot. Mr. Cannon was taken to the hospital by ambulance, and later died from the gunshot wound. At the scene of the crime, Officer Pettigrew asked Mr. Cannon's wife, Patricia Cannon, to describe the assailant. Mrs. Cannon, who is white, described him as a light-complected black male, approximately 5' 4" to 5' 5" in height, and wearing a white t-shirt with red trim and light-colored pants.

Teresa Jones, who performed secretarial duties for the Wynne Police Department, testified that she became involved in the murder investigation. She stated that a few days after the murder, she showed Mrs. Cannon a book of photographs and that Mrs. Cannon identified Mr. Lenoir stating, "I know this is him because of his eyes." Mrs. Cannon continued to examine the photographs, found an additional yet different picture of Mr. Lenoir, and again stated, "This is him." Based on Mrs. Cannon's identification of Mr. Lenoir, he was arrested.

Captain Oscar Wilson testified that he was the criminal investigator assigned to the case. He stated that he spoke with Mrs. Cannon and that she described the assailant as a black male who was 5' 8" to 5' 9", and weighed 140 to 150 pounds. Captain Wilson placed Mr. Lenoir in a six-man lineup with other black males of similar description.

Captain Wilson testified that the lineup was in a room with a video system, but that the system malfunctioned. Thereafter, he directed Mrs. Cannon to look at the lineup through the window of a door, and she identified Mr. Lenoir. Captain Wilson obtained a warrant to search Mr. Lenoir's sister's residence because that is where he was arrested. During the search, the police found a white shirt with red trim in the living room among some dirty clothes, and Mrs. Cannon identified it as the shirt Mr. Lenoir wore on the night of the shooting. Captain Wilson acknowledged that the shirt contained the lettering "CHICAGO," which was not mentioned by Mrs. Cannon when she described it earlier.

Mrs. Cannon testified about the murder. She stated that at about 8:00 p.m. on September 23, 1997, she was working at City Liquor and was arranging beer on some shelves while her husband was in the bathroom. She heard the door-chime ring, and when she turned around a man put a gun in her face and said, "Give me your money." Mrs. Cannon stated that she recognized his voice because he was an occasional customer, and thought he was joking until he said, "I'm serious." Mrs. Cannon testified that the man held her at gunpoint with the gun touching her forehead for about two minutes until Mr. Cannon emerged from the back of the store.

When Mr. Cannon came through the door, the assailant threw Mrs. Cannon to the floor and shot Mr. Cannon. He then told Mrs. Cannon to "get up and give me your money, or I'll blow you away." Mrs. Cannon testified that she told him to wait a minute until she regained her senses, and then walked to the cash register and opened it. The assailant then took all the money from the register and fled.

Mrs. Cannon recalled identifying Mr. Lenoir from the book of photographs and stated that when she saw his picture, "It turned me inside out and I lost it." During the lineup procedure at the police station, Mrs. Cannon heard Mr. Lenoir state, "I did not shoot no one," and she recognized that as the same voice that said, "Give me your money." When she looked through the window at the lineup, all of the men looked at Mrs. Cannon except

Mr. Lenoir, who initially did not look up. When he finally made eye contact, Mrs. Cannon identified him.

Mrs. Cannon also identified Mr. Lenoir as the murderer at trial. She testified:

> I positively identified Antonio Lenoir. I am positive today. When I die and go to my grave, me and the good Lord knows I've got the right guy. I have never had a shadow of a doubt in over three years.

Mr. Lenoir testified on his own behalf and stated that he was in Parkin drinking beer with friends on the evening of the murder, and that he did not go to Wynne that night. He presented other defense witnesses who corroborated his testimony that he could not have committed the murder because he was in Parkin when it occurred.

We first address Mr. Lenoir's argument that there was insufficient evidence to support his conviction for first-degree murder. He argues that there was an absence of evidence to connect him with the crime other than the identification by Mrs. Cannon, which he asserts was insufficient in light of the circumstances surrounding the murder and inaccuracies in the descriptions she gave to the police.

Mr. Lenoir notes that the incident occurred suddenly, that Mrs. Cannon admitted she was "in shock," and that her view of the assailant was restricted because she was looking down the barrel of a gun. Based on these factors, he submits that she could not have been able to accurately identify the assailant.

Mr. Lenoir also makes reference to the fact that he is 5' 6" and Mrs. Cannon described him at different times as being anywhere from 5' 4" to 5' 9". Moreover, Mrs. Cannon described him as having short hair, and Mr. Lenoir maintains that his hair was not short at the time of the robbery. Mr. Lenoir has a missing front tooth and several tatoos on his arms and hands, and Mrs. Cannon did not mention any of those distinguishing features when talking with the police. As for the shirt that he allegedly wore, Mr. Lenoir notes that it says "CHICAGO," but this fact was absent from Mrs. Cannon's description of his clothing. Due to

the suddenness of the crime and the inconsistencies and inaccuracies of Mrs. Cannon's descriptions, Mr. Lenoir contends that there was no substantial evidence to support the jury's finding that he was the person who committed the murder.

 We hold that Mr. Lenoir's conviction is supported by substantial evidence. The testimony of one eyewitness alone is sufficient to sustain a conviction. *Wesley v. State*, 318 Ark. 83, 883 S.W.2d 478 (1994). In this case, Mrs. Cannon identified Mr. Lenoir as the perpetrator by selecting him from a book of photographs and from a lineup, and she also identified him at trial. She testified that she was positive about the identification. Mr. Lenoir relies on the inaccuracies of her prior descriptions given to police officers. However, the appellate court does not weigh the evidence presented at trial or weigh the credibility of witnesses, as these are matters to be resolved by the finder of fact. *See Rabb v. State*, 72 Ark. App. 396, 39 S.W.3d 11 (2001). The jury credited the testimony of Mrs. Cannon, as it was entitled to do, and her testimony supported the jury's finding that Mr. Lenoir was guilty of first-degree murder.

We next address Mr. Lenoir's argument that he was denied a fair trial because the trial court excluded the testimony of his expert witness on cross-racial identification. He notes that in the first trial in this case, which resulted in a hung jury, the testimony of such an expert was permitted. In the subsequent trial resulting in conviction, Mr. Lenoir had retained John C. Brigham, Ph.D., an alleged expert on the problems with cross-racial eyewitness identification, but the trial court granted the State's motion to exclude his testimony.

Mr. Lenoir asserts that, because the State's case was based entirely on the identification by Mrs. Cannon, the expert testimony should have been admitted pursuant to Ark. R. Evid. 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Mr. Lenoir asserts that, as his expert testified in the first trial, the expert in this case would have testified that Caucasians have difficulty identifying African-Americans, and that victims of a crime tend to focus on the weapon if one is used. Mr. Lenoir further asserts that Mr. Brigham would have testified that there is no correlation, and can even be a reverse correlation, between the certainty of the witness and reliability of her testimony.

Mr. Lenoir acknowledges that there is no Arkansas law directly on point to support his argument.[1] However, he cites *Brodes v. Georgia*, 551 S.E.2d 757 (Ga. App. 2001), where the Georgia Court of Appeals reversed appellant's armed robbery conviction based on its holding that the trial court abused its discretion in excluding the testimony of an expert on the reliability of witness identification. In that case, the only evidence against the appellant was his cross-racial identification by the victims, and the court of appeals stated that the expert's testimony about the effects of cross-racial identification, tendency of the victim who is being robbed to focus on the gun instead of the culprit's face, and lack of relationship between a victim's confidence and accuracy were not otherwise likely to be fully understood by jurors and were highly relevant. The court further held that the trial court's erroneous exclusion of the expert testimony was not harmless because the only evidence of appellant's involvement in the robbery was the victim's eyewitness identification, and appellant's sole defense was mistaken identity.

Mr. Lenoir also cites *People v. Drake*, 728 N.Y.S.2d (2001). In that case, the New York Supreme Court ruled that expert testimony on eyewitness identification was appropriate in appellant's trial for numerous charges, including attempted murder. In reaching its decision, the court relied on several factors, including the violence and stress involved, the weapon used, and the cross-racial aspect of the identification of the appellant, and ruled that these identification issues might not be apparent to an ordinary person.

---

[1] We attempted certification of this case to the supreme court pursuant to Ark. Sup. Ct. Rule 1-2(b)(1)(5). The supreme court declined certification.

In the instant case, Mr. Lenoir contends that the identification made by Mrs. Cannon was suspect given the use of a weapon by the culprit, the stress involved, the short time that elapsed, and the cross-racial aspect of the identification. He argues that the testimony of his expert witness was essential to his defense and would have helped the jury understand the reliability of such an identification.

 The trial court has discretion in the admissibility of expert-witness testimony, which will not be reversed absent an abuse of discretion. *Parker v. State*, 333 Ark. 137, 968 S.W.2d 592 (1998). We hold that the trial court did not abuse its discretion in refusing to admit Dr. Brigham's testimony.

In reaching our decision we rely on *Utley v. State*, 308 Ark. 622, 826 S.W.2d 268 (1992). In that case, our supreme court declined an invitation by the appellant to follow cases from other jurisdictions, and held that the trial court did not abuse its wide discretion in excluding expert testimony about factors affecting the reliability of eyewitness testimony. The appellant in *Utley v. State, supra,* was convicted of aggravated robbery based on the testimony of the two victims. Although the crime occurred suddenly and quickly and appellant held the victims at gunpoint, our supreme court ruled that the effect of stress on the reliability of identification was easily understood by the jury without expert testimony, and that the testimony could have hindered the jury's ability to judge impartially the credibility of and weight to be accorded the witnesses' testimony.

 Our supreme court in *Utley v. State, supra,* declined to follow other jurisdictions in reaching its holding on the admissibility of expert identification testimony, and in the case at bar we are not persuaded to follow the authorities cited by Mr. Lenoir. As sole judge of the credibility of witnesses, the jury was adequately equipped to consider Mrs. Cannon's testimony in light of their own personal experiences and common sense and decide whether her identification was reliable. The exclusion of the expert witness's testimony was not error.

Mr. Lenoir next argues that the trial court erred in refusing to give a jury instruction on the question of cross-racial identifica-

tion. At the close of the case, Mr. Lenoir proffered the following instruction:

> You know the identifying witness is of a different race than the defendant. When a witness who is a member of one race identifies a member who is of another race, we say there has been a cross-racial identification. You may consider, if you think it is appropriate to do so, whether the cross-racial nature of the identification has affected the accuracy of the witness's original perception and/or accuracy of a subsequent identification.

For his argument, Mr. Lenoir cites *State v. Cromedy*, 727 A.2d 457 (N.J. 1999), where the New Jersey Supreme Court held in a case of first impression that, in a rape case where a white victim identified her African-American assailant, it was error for the trial court to deny the appellant's requested jury instruction on cross-racial identification. Mr. Lenoir argues that the proposed instruction in the present case would have helped focus the jury on the problems of cross-racial identification. He contends that the failure to give the instruction violated due process because the cross-racial eyewitness identification was the only evidence presented against him.

██ ██ In determining if the trial court erred in refusing an instruction in a criminal trial, the test is whether the omission infects the entire trial such that the resulting conviction violates due process. *Branstetter v. State*, 346 Ark. 62, 57 S.W.3d 105 (2001). We hold that refusal to give the instruction did not violate due process. In this case, the jury was instructed to weigh the evidence and credibility of witnesses in light of their observations and experiences, and the proposed jury instruction was not necessary for the jury to assess the testimony given by Mrs. Cannon. Mr. Lenoir has cited no binding authority to support his position on this issue, and we again decline to follow the authority he cites from another jurisdiction.

We now turn to the improper evidentiary rulings asserted by Mr. Lenoir. The first of these rulings was the trial court's exclusion of proffered photographs of Mr. Lenoir that showed a small mustache, missing front tooth, and multiple tattoos on his arms and hands. He argues that these photographs were relevant and admissible to show distinguishing marks and features not men-

tioned in Mrs. Cannon's descriptions to the police, thereby attacking the credibility of her identification testimony.

█ █ Admission of photographs rests within the sound discretion of the trial court, and its decision will not be reversed absent an abuse of that discretion. *Ramaker v. State*, 345 Ark. 225, 46 S.W.3d 519 (2001). The trial court's refusal to admit the photographs was not an abuse of discretion because they were merely cumulative of other evidence and were thus properly excluded under Ark. R. Evid. 403. It is undisputed that, during his testimony, Mr. Lenoir displayed a missing tooth and his numerous tatoos to the jury, and in refusing to admit the photographs the trial court announced, "I am going to deny them as they show exactly what the defendant has shown the jury in person." Moreover, even had the trial court erred in excluding the photographs, such error resulted in no prejudice, and we will not reverse an evidentiary ruling absent a showing of prejudice. *See Clark v. State*, 323 Ark. 211, 913 S.W.2d 297 (1996).

Mr. Lenoir next argues that the trial court erred in granting the State's motion to exclude the testimony of one of the investigating officers who, eighteen minutes after responding to Mrs. Cannon's report of the shooting, found three males in close proximity to the liquor store. According to the officer, the males fled as he approached them. Mr. Lenoir contends that the jury should have been allowed to weigh the evidence of the other subjects' possible involvement in the crime against the evidence presented by the State.

█ █ The testimony proffered by Mr. Lenoir was inadmissible pursuant to *Zinger v. State*, 313 Ark. 70, 852 S.W.2d 320 (1993), where our supreme court stated:

> A defendant may introduce evidence tending to show that someone other than the defendant committed the crime charged, but such evidence is inadmissible unless it points directly to the guilt of the third party. Evidence which does no more than create an inference or conjecture as to another's guilt is inadmissible.

*Id.* at 75, 852 S.W.2d at 323 (citing *State v. Wilson*, 367 S.E.2d 589 (N.C. 1988)). In the instant case, there was no evidence that the three males were involved in the crime given that there was no evidence that they were ever present in the liquor store, and their identities or other information about them was never ascertained.

The trial court did not abuse its discretion in excluding the testimony.

Finally, we address Mr. Lenoir's argument that the trial court erred in failing to exclude the testimony of a rebuttal witness who had been sitting in the courtroom during the trial. He correctly asserts that Ark. R. Evid. 615 had been invoked, which provides:

> At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party that is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

After the defense rested, the State called the victim's son, Joseph Cannon, Jr., as a rebuttal witness. Mr. Lenoir objected, but the trial court allowed the witness to testify, notwithstanding the fact that the witness was not excused by "the rule" and was present during the trial. Mr. Lenoir contends that Mr. Cannon's testimony was opposite that of the defense's alibi witnesses, was prejudicial, and should have been excluded.

We hold that any possible error in permitting Mr. Cannon to testify was rendered harmless by the rebuttal testimony of Deputy Larry Williams. Mr. Cannon testified that it was raining hard on the night of the murder, which contradicted Mr. Lenoir's testimony in this regard. However, after Mr. Cannon testified, Deputy Williams also testified, without objection, that it was raining hard on the night at issue. Moreover, in the State's case-in-chief, Officer Pettigrew testified, "It was raining steadily." The admission of evidence that is merely cumulative of other evidence admitted without objection is not prejudicial. *Bunn v. State*, 320 Ark. 516, 898 S.W.2d 450 (1995).

Upon reviewing each of the points argued by Mr. Lenoir on appeal, we hold that no reversible error occurred. Therefore, his conviction for first-degree murder is affirmed.

Affirmed.

HART and BAKER, JJ., agree.