Cite as 2019 Ark. App. 433

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CR-18-921

| | |
|---|---|
| CHRISTOPHER W. TERRELL<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered** October 2, 2019<br><br>APPEAL FROM THE POINSETT COUNTY CIRCUIT COURT<br>[NO. 56CR-15-21]<br><br>HONORABLE JOHN N. FOGLEMAN, JUDGE<br><br>AFFIRMED |

**N. MARK KLAPPENBACH, Judge**

A Poinsett County Circuit Court jury found appellant Christopher Terrell guilty of first-degree murder in the death of James Hunt. On appeal, Terrell argues that (1) insufficient evidence supports his conviction; (2) the circuit court erred in denying his motion in limine; (3) the circuit court erred in admitting the prior testimony of an unavailable witness; (4) the circuit court erred in denying his motion for a new trial; and (5) the circuit court erred in denying his two motions for a mistrial. We affirm Terrell's conviction.

James Hunt's body was discovered by law enforcement underneath his burnt truck at a levee in Marked Tree on November 29, 2014. Hunt died from a shotgun wound to the head. Trails of blood led to the truck, and law enforcement determined that the body had been rolled down a hill for more than sixty feet. Hunt's wife, Peggy, told law enforcement that Terrell and Betty Grant had been around her husband prior to his death.

Peggy testified that on November 27, 2014, she received a call from Terrell from the phone number (870) 227-3854 asking if she knew where Grant was. She provided police with Terrell's phone number as well as other numbers that appeared on her husband's phone. Law enforcement started looking for Terrell and Grant and did an "emergency ping" on Terrell's phone number.

Grant was interviewed by police the next day and told them that she had accidentally killed Hunt. However, she testified at trial that she was under the influence of methamphetamine during this interview and that nothing she had said was true. She testified that it was, in fact, Terrell who had killed Hunt. Grant said that she had been in sexual relationships with both men. She recounted her actions in the days leading up to the murder starting on Thanksgiving Day, November 27, which was when she said Hunt took her to his house to get high and injected her with methamphetamine. Grant recalled going to a motel with Hunt and another man and making a "sex movie." She testified that on November 29, she took Terrell to "Miss Laura's" home before she went back to Hunt's house and continued using methamphetamine. Later, both Grant and Terrell were at a friend's house when Terrell walked outside holding something wrapped in a blue shirt and told Grant to get in her car.

Terrell and Grant drove to the levee, and Terrell then called Hunt several times to tell him to come to the levee with some gasoline. Grant testified that the hood and trunk of the car were open, and she fell asleep in the front seat. Grant awoke to "a really loud noise like a gun" and saw Hunt bleeding from the face and appearing to take his last breaths. Grant then saw Terrell dragging Hunt past the car, and she refused his request to help.

2

When she looked up again, Hunt was at the bottom of the levee. Terrell then drove Hunt's truck down to the bottom of the levee, poured gas on it, and set it on fire. When Terrell returned to the car, he told Grant that she "was his now." Grant said that Terrell changed clothes, they drove around, and Terrell watched the "sex movie" from the camcorder he had taken from Hunt's truck. They eventually ended up at the house of Terrell's brother, Keith Terrell. Grant said that she went to sleep and remembered Terrell waking her up, hitting her in the face and head, and telling her that she was not telling the story right.

Joseph Wilson testified that "Miss Laura" is his grandmother and that he was working on her car with Terrell on November 29, 2014, when Terrell asked if Wilson could get him a gun. When he asked Terrell what he needed a gun for, Terrell said it was to "take care of some business." Wilson was not able to get a gun for Terrell. Wilson said that he later dropped Terrell off at Sydney Phillips's home and then rode around with his girlfriend before encountering Terrell sitting in Grant's car at the levee. Wilson thought he saw Grant pass by him in the passenger seat of an older model truck. As Wilson was leaving, he saw Grant's car parked with the trunk open and Terrell walking out of the woods.

Lloyd Watson was deemed an unavailable witness, and his prior testimony was read into the record. Watson lived next door to Terrell's brother, Keith. On November 29 between 7:30 and 8:15 p.m., Watson was outside when he saw a car speed by his house and park next door. Watson had not seen the car in a while, but Terrell had previously told him that it belonged to his girlfriend. Watson heard two doors slam but did not see who got out of the car. The next morning, Watson saw the car backed into the shed area behind the house. He saw Terrell get out of the car and take several items from the trunk into the

3

shed, including a spare tire, several gas cans, and clothes. Watson said that Terrell seemed to be in a rush and that Terrell then removed the driver's-side door panel and took it into the shed. The police seized the door panels, along with clothes and gas cans, but no blood was found on them.

Special Agent Kevin Horan of the FBI testified about performing a historical record analysis of the cell phone number (870) 227-3854 for the time between 1:54 and 4:04 p.m. on November 29, 2014. Horan explained how cell phones communicate with phone towers by measuring the signal strength and how he could illustrate where a phone was located at a certain date and time that it was used. The phone number in this case belonged to a Verizon prepaid phone. Horan said that Verizon measures how long it takes for the phone signal to go from the tower to the phone and back, and on the basis of that measurement, Verizon could provide the approximate distance a phone was located from a cell tower. Horan said that thirty range-to-tower measurements were taken in the analyzed time period from calls, texts, and data usage. He produced maps showing the areas the phone had been used in close proximity to the location of the murder.

The jury found Terrell guilty, and he was sentenced to twenty-three years' imprisonment. Terrell subsequently filed a motion for new trial alleging that the jury had erroneously considered the theory of accomplice liability and had convicted him as an accomplice. After a hearing, the motion was denied.

I. *Sufficiency of the Evidence*

Terrell first argues that there is no substantial evidence to support his conviction given Grant's initial confession to the murder and the fact that she blamed him only after she had been in custody for four months facing a murder charge. Grant admitted that she told police numerous times in her initial interview that Terrell had nothing to do with Hunt's death and that it took her four months to remember things. Special Agent Mike Grimes with the Arkansas State Police testified that he believed Grant may have been under the influence of something at the time of her interview. She had been unable to make bond until after her murder charge had been dropped, and at the time of Terrell's trial, she was facing only a charge of hindering apprehension. Terrell further argues that, notwithstanding her credibility issues, because Grant testified that she did not see the shot being fired or the circumstances surrounding it, her testimony was insufficient to show that he purposely caused Hunt's death.

The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Lenoir v. State*, 77 Ark. App. 250, 72 S.W.3d 899 (2002). Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or the other and pass beyond mere suspicion or conjecture. *Id.* In reviewing the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Id.*

Terrell was charged with causing the death of another person "with a purpose of causing the death of another person." Ark. Code Ann. § 5-10-102(a)(2) (Supp. 2017). A person acts purposely with respect to his or her conduct or a result of his or her conduct

5

when it is the person's conscious object to engage in conduct of that nature or to cause the result. Ark. Code Ann. § 5-2-202(1) (Repl. 2013). A criminal defendant's intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. *Stearns v. State*, 2017 Ark. App. 472, 529 S.W.3d 654. It is axiomatic that one is presumed to intend the natural and probable consequences of his or her actions. *Id.* Furthermore, the intent necessary for first-degree murder may be inferred from the type of weapon used, the manner of its use, and the nature, extent, and location of the wounds. *Id.*

Terrell relies on Grant's changing statements to police, but this court does not weigh the evidence presented at trial or weigh the credibility of witnesses, as these are matters to be resolved by the finder of fact. *Lenoir*, *supra*. The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Stearns*, *supra*. The jury credited Grant's testimony, as it was entitled to do, and we hold that her testimony along with the testimony of other witnesses constitutes substantial evidence to support Terrell's conviction.

Although Grant did not see the shot being fired, she heard it and immediately thereafter saw Hunt dying from a gunshot wound to his face. She then saw Terrell drag Hunt's body, position Hunt's truck over the body, and light the truck on fire. Earlier that day, Terrell had asked Joseph Wilson for help acquiring a gun that he needed to "take care of some business." Wilson saw Terrell at the levee the afternoon of the murder. After the murder, Lloyd Watson saw Terrell disposing of items from Grant's car. A jury may properly consider an attempt to cover up one's connection to a crime as proof of a purposeful mental

6

state. *Stearns*, *supra*. Viewing the evidence in the light most favorable to the State, we hold that substantial evidence supports the conviction. Terrell makes a further argument regarding a juror's affidavit related to his motion for new trial, but this is not a proper consideration in determining the sufficiency of the evidence.

## II. *Motion in Limine*

Prior to trial, Terrell filed a motion in limine to exclude the testimony of Special Agent Horan on the basis that it did not satisfy the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and that it was speculative, overly prejudicial, and lacked a proper foundation. At a pretrial hearing, before testifying about his analysis as he did at trial, Horan testified that he has been a member of the FBI's Cellular Analysis Survey Team for seven years, has been through extensive training, and has testified more than eighty times. The circuit court denied Terrell's motion upon recognizing Horan as an expert and finding pursuant to Arkansas Rule of Evidence 702 that scientific, technical, or other specialized knowledge would assist the trier of fact to understand the evidence or to determine a fact in issue. Terrell now argues that there was insufficient proof that Horan's methodology was valid because there was no proof that it was peer reviewed, generally accepted within his field, or controlled by any standards. Terrell contends that Horan's testimony amounted to little more than his estimates that were based on unverified estimates from cell providers, and none of his work could be tested.

In *Daubert*, the Supreme Court established an inquiry to be conducted by the circuit court when faced with the admissibility of certain expert testimony. In *Farm Bureau Mutual Insurance Co. v. Foote*, 341 Ark. 105, 14 S.W.3d 512 (2000), the Arkansas Supreme Court

7

adopted *Daubert* and held that a circuit court must determine at the outset whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. *Ridling v. State*, 360 Ark. 424, 203 S.W.3d 63 (2005). This inquiry entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology can be properly applied to the facts in issue. *Id.* A primary factor for a circuit court to consider in determining the admissibility of scientific evidence is whether the scientific theory can be or has been tested. *Id.* Other factors include whether the theory has been subjected to peer review and publication, the potential error rate, and the existence and maintenance of standards controlling the technique's operation. *Id.* It is also significant whether the scientific community has generally accepted the theory. *Id.*

However, not all expert testimony is subject to the *Daubert* analysis. *Turbyfill v. State*, 92 Ark. App. 145, 211 S.W.3d 557 (2005). The inquiry to be made by the circuit court is a flexible one, not a rigid one, and the *Daubert* factors neither necessarily nor exclusively apply to all experts or in every case. *Id.* The law grants a circuit court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination. *Id.* Moreover, the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony. *Id.*

After Horan testified at the hearing on Terrell's motion, defense counsel argued that the analysis was merely an investigative tool that produced estimates of varying reliability and was not based on sufficiently stringent scientific evidence. The circuit court noted that

8

Horan fully acknowledged that the analysis produced estimates of where a phone may have been located and found that the defense's objections went more to the weight of the evidence than its admissibility. Terrell did not obtain a ruling on any of the *Daubert* factors that he now argues on appeal. In assessing reliability, the circuit court may, at its discretion, consider the *Daubert* factors to the extent relevant. *Turbyfill*, *supra*. Here, the court found under Rule 702 that Horan's expert testimony was admissible because it would assist the jury in understanding the evidence or determining a fact in issue. We do not find this to be an abuse of discretion. Terrell argues in the alternative that his cell-site location records were illegally seized without a search warrant pursuant to a U.S. Supreme Court case decided after his conviction. However, because Terrell did not challenge the seizure of his records below, this argument is not preserved for appeal.

### III. *Admission of Prior Testimony*

Because Lloyd Watson was unavailable as a witness, the State asked to introduce his prior testimony from Terrell's first trial, which ended in a mistrial. Terrell objected, arguing that the prior motive and opportunity to cross-examine was different and that the prior testimony did not include anything about Watson's prior convictions or the fact that he had allegedly used several aliases. The circuit court admitted the prior testimony and allowed the defense to introduce Watson's prior felony conviction. The court ruled that Watson's 1992 misdemeanor conviction for criminal impersonation was not admissible nor was ACIC information showing possible aliases Watson had used.

Rule 804(b)(1) of the Arkansas Rules of Evidence provides that the following is not excluded by the hearsay rule if the declarant is unavailable as a witness:

> Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Thus, the admission of prior testimony requires both the opportunity to cross-examine the witness and a similar motive to develop his or her testimony. *Bertrand v. State*, 363 Ark. 422, 214 S.W.3d 822 (2005). Similar motive does not mean identical motive, and the inquiry is inherently factual. *Dennis v. State*, 2016 Ark. 395, 503 S.W.3d 761.

Terrell argues that the motive to cross-examine Watson at the first trial was different because the information about Watson's criminal history and use of aliases was not introduced. We agree with the State that Terrell's argument is directed not at motive but instead at defense counsel's decision in the first trial not to cross-examine Watson on certain issues. Defense counsel in the first trial had the opportunity and similar motive in cross-examining Watson, and the fact that Watson was not cross-examined about his criminal history does not change this. Thus, the circuit court did not err in admitting the testimony.

IV. *Motion for New Trial*

Terrell next argues that the circuit court abused its discretion in denying his motion for a new trial. We do not reach the merits of this argument because Terrell failed to timely appeal the denial. The sentencing order was entered on April 12, 2018, and Terrell timely filed his motion for new trial on May 9, 2018. On May 10, Terrell filed a notice of appeal from the sentencing order. On July 23, the circuit court held a hearing on the motion and orally denied it. Terrell filed an amended notice of appeal on July 26, appealing from the

10

sentencing order and "the circuit court's denial of his motion for new trial on July 23, 2018."

Pursuant to Arkansas Rule of Criminal Procedure 33.3(c), if the circuit court neither grants nor denies a posttrial motion within thirty days after the date the motion is filed, the motion shall be deemed denied as of the thirtieth day. The circuit court loses the authority to act on a posttrial motion once it has been deemed denied. *Wright v. State*, 359 Ark. 418, 198 S.W.3d 537 (2004). Terrell's motion for new trial was thus deemed denied on June 8, 2018, and the circuit court had no jurisdiction to act on it in July. Because the motion was deemed denied on June 8, Terrell failed to file a timely notice of appeal. Arkansas Rule of Appellate Procedure–Criminal 2(b)(2) provides as follows:

> A notice of appeal filed before disposition of any post-trial motions shall be treated as filed on the day after the entry of an order disposing of the last motion outstanding or the day after the motion is deemed denied by operation of law. Such a notice is effective to appeal the underlying judgment or order. A party who also seeks to appeal from the grant or denial of the motion shall within thirty (30) days amend the previously filed notice, complying with subsection (a) of this rule. No additional fees will be required for filing an amended notice of appeal.

Pursuant to this rule, Terrell's May 10 notice of appeal was effective to appeal only the sentencing order, and Terrell did not amend the notice of appeal within thirty days of the denial of his motion. Terrell's amended notice of appeal filed on July 26, 2018, was too late, and his appeal of the denial of his motion for new trial is not properly before us. *See Wright*, *supra*.

## V. *Motions for Mistrial*

Terrell argues that the circuit court abused its discretion in denying his motion for a mistrial when Grant testified that Terrell had injected her with 80 ccs of methamphetamine.

The State contends that Grant did not testify as Terrell alleges. The record reveals that Grant testified that she got high at Hunt's house on Thanksgiving Day by ingesting 80 ccs of methamphetamine via a needle. She further testified as follows:

PROSECUTOR: Okay. Was that, did you typically use that much methamphetamine?

GRANT: No.

PROSECUTOR: How long had you been using meth?

GRANT: I had off and on for a long time, but not like that.

PROSECUTOR: Okay. What do you mean not like that?

GRANT: I would just smoke it whenever I used it like that until Chris done it.

PROSECUTOR: Until Chris done it, you said?

Defense counsel then objected and asked for a mistrial at a bench conference because his file reflected that Hunt, not Terrell, had injected Grant with a needle and this testimony violated Rule 404(b). The court denied the motion for a mistrial but agreed to instruct the jury to disregard the statement. The trial continued as follows:

THE COURT: Ladies and gentlemen, in regard to the last statement of the witness, you are to disregard that statement. All right. Proceed.

PROSECUTOR: All right. So you stated that James Hunt injected you with the 80 of methamphetamine?

GRANT: Right.

We agree with the State that the record does not support Terrell's allegation that "Grant testified that Terrell injected her with 80 ccs of methamphetamine." It is unclear what Grant was referring to when she brought up Terrell's name, but after the objection,

12

she clearly testified that it was Hunt who had injected her with the 80 ccs of methamphetamine. Accordingly, Terrell's argument on appeal is without merit.

Terrell next argues that the circuit court abused its discretion in denying his motion for a mistrial during the testimony of Special Agent Mike Grimes. At a bench conference, the prosecutor stated that he intended to ask Grimes if law enforcement received a phone number that was "pinged" and what the number was. The court agreed that these questions could be asked, stating, "I would admit it not for the truth of the matter of who it belongs to because I'm not permitting him to say that, but to show why they did what they did." The prosecutor asked Grimes whether Hunt's family had provided a phone number, what law enforcement did with the number, and what the number was. He then asked whether Hunt's family had indicated "whose number they believed that to be." Grimes answered, "Christopher Terrell." Defense counsel objected, and the court said that it had just ruled that this question was not permitted. The prosecutor stated that he did not understand that to be the ruling. The court denied the motion for a mistrial and instead instructed the jury to disregard the last answer.

Terrell argues that a mistrial, not an admonition, was necessary to cure the prejudice of the hearsay statements attributed to Hunt's family members regarding his association with that phone number. The State argues that Terrell cannot demonstrate prejudice because prior to Grimes's testimony, Hunt's wife testified that Terrell had called her from the phone number at issue two days before the murder and she had provided Terrell's phone number to the police. It is well settled that a mistrial is an extreme remedy that should be granted only when the error is beyond repair and cannot be corrected by curative relief. *Price v.*

13

*State*, 2010 Ark. App. 111, 377 S.W.3d 324.  A circuit court has wide discretion in granting or denying a motion for a mistrial, and the appellate court will not disturb the court's decision absent an abuse of discretion or manifest prejudice to the movant.  *Id*. When similar evidence is previously admitted without objection, the admission of later testimony on the same subject is not considered prejudicial.  *Id*. We agree with the State that the circuit court did not abuse its discretion in denying the mistrial because the evidence had already been admitted.

Affirmed.

HIXSON and BROWN, JJ., agree.

*James Law Firm*, by: *Michael Kiel Kaiser* and *Bobby R. Digby II*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *David L. Eanes, Jr.*, Ass't Att'y Gen., for appellee.